## MATTER OF HERNANDEZ-CASILLAS

### In Deportation Proceedings

### A-17963863

*Decided by Board January 11, 1990*
*Decided by Attorney General March 18, 1991*

(1) In a case referred to him for review under 8 C.F.R. § 3.1(h) (1990), the Attorney General disapproves the decision of the Board of Immigration Appeals holding that a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1988), should be available to aliens deportable under any ground of deportation except those where there is a comparable ground of exclusion which has been specifically exempted from section 212(c).

(2) The Attorney General concludes that a lawful permanent resident of the United States, who has been found deportable under section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1988), for entry without inspection, is ineligible for a waiver under section 212(c) of the Act because there is no ground of exclusion which is comparable to the entry without inspection ground of deportation.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Barbara Hines, Esquire
1005 East 40th Street
Austin, Texas 78751

ON BEHALF OF SERVICE:
Lawrence J. Hadfield
General Attorney

BY: Milhollan, Chairman; Dunne, Board Member. Concurring Opinion: Heilman, Board Member. Dissenting Opinion: Vacca and Morris, Board Members.

### BEFORE THE BOARD
(January 11, 1990)

In a decision dated March 14, 1986, an immigration judge found the respondent deportable as charged, denied his motion to terminate proceedings, denied his application for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1982), and denied his application for voluntary departure. The respondent was ordered deported from the United States to Mexico. The respondent has appealed. The appeal will be sustained and the record will be remanded to the immigration judge.

The respondent is a 33-year-old native and citizen of Mexico who was admitted to the United States on July 4, 1967, as a lawful permanent resident. On April 13, 1985, an Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) was issued against the respondent, alleging that he had entered the United States near Del Rio, Texas, on or about April 13, 1985, without being inspected by an immigration officer. He was charged with deportability under section 241(a)(2) of the Act, 8 U.S.C. § 1251(a)(2) (1982).

At his March 14, 1986, deportation hearing, the respondent, through counsel, denied the allegations in the Order to Show Cause and denied deportability. The Immigration and Naturalization Service introduced into evidence a certified conviction record. The conviction record includes a complaint that the respondent knowingly and willfully entered the United States at a time and place other than as designated by immigration officers. The complaint further states that the respondent was observed entering the United States by Border Patrol Agents at a point near Del Rio, Texas, by wading the Rio Grande River, and that he was guiding across the river a group of illegal aliens whom he planned to transport to the Austin, Texas, area for a fee of approximately $1,000. The respondent was convicted on his plea of guilty of the offense of entering the United States at a time and place other than as designated by immigration officers. He admitted at the hearing that the conviction record related to him.

At the hearing, the respondent made a motion to terminate his deportation proceedings on the ground that the Service violated Immigration and Naturalization Service Operations Instructions 242.1a(13) by not including an averment on the Order to Show Cause that the respondent was admitted as an immigrant and has not abandoned his residence.[1] This motion was denied by the immigration judge.[2] The respondent then applied for a waiver of inadmissibility pursuant to section 212(c) of the Act. An Application for Advance Permission to Return to Unrelinquished Domicile (Form I-191) and supporting documents were introduced into evidence. The respondent made an offer of proof of the testimony he and his wife would give in support of the application. The offer of proof essentially stated that the

---

[1] Operations Instructions 242.1a(13) provides that if an alien was admitted as an immigrant and has not abandoned his residence, the Order to Show Cause shall contain an averment to that effect.

[2] In denying this motion the immigration judge relied in part on the proposition that an entry without inspection divests an alien of his status as a lawful permanent resident of the United States. This was error. In *Matter of Gunaydin*, 18 I&N Dec. 326 (BIA 1982), we held that the status of a lawful permanent resident who entered the United States without inspection terminates only when the adjudication of his deportability becomes final in administrative proceedings.

respondent had been a lawful permanent resident since 1967 and that his United States citizen wife and children would suffer hardship should he be deported.

The immigration judge denied the application for a section 212(c) waiver on the ground that this relief is not available to an alien who is deportable under section 241(a)(2) of the Act for having entered the United States without inspection.

On appeal, the respondent has not challenged his deportability on the entry without inspection charge. However, he does argue that the deportation proceedings should have been terminated because of the violation of Operations Instructions 242.1a(13). We disagree. To begin with, Operations Instructions generally do not have the force of law. They furnish only general guidance for Service employees and do not confer substantive rights or provide procedures upon which an alien may rely. *Ponce-Gonzalez v. INS*, 775 F.2d 1342 (5th Cir. 1985); *Dong Sik Kwon v. INS*, 646 F.2d 909 (5th Cir. 1981); *Nicholas v. INS*, 590 F.2d 802 (9th Cir. 1979); *Matter of Ibrahim*, 18 I&N Dec. 55 (BIA 1981); *Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980). Moreover, the respondent suffered no harm from the omission on the Order to Show Cause. *See, e.g., Nicholas v. INS, supra; Matter of Santos*, 19 I&N Dec. 105 (BIA 1984). It was never disputed that the respondent was a longtime lawful permanent resident of the United States.

The respondent's primary contention on appeal is that he is eligible for section 212(c) relief. The respondent asserts, as he did during the proceedings below, that the Service should lodge a charge against him under section 241(a)(13) of the Act, relating to the smuggling of aliens for gain. Since section 241(a)(13) has a corresponding exclusion ground (section 212(a)(31) of the Act), it is argued that the respondent would be eligible for section 212(c) relief if the additional charge is made. The respondent cites the case of *Marti-Xiques v. INS*, 713 F.2d 1511 (11th Cir. 1983), *vacated on rehearing*, 724 F.2d 1463 (11th Cir.), *decided on other grounds*, 741 F.2d 350 (11th Cir. 1984), for the proposition that where a respondent is deportable under two grounds arising out of the same incident, section 212(c) permits waiver of an unenumerated ground if a more serious ground is an enumerated ground for the waiver. Finally, the respondent contends that the statute as construed by the immigration judge is unconstitutional and violates the respondent's equal protection rights.

This case affords us an opportunity to address the issue of the availability of section 212(c) to aliens who have been charged with deportability under section 241(a)(2) for entry without inspection, and to other aliens deportable under certain other grounds. At present, a section 212(c) waiver is available in deportation proceedings only to those aliens who have been found deportable under a ground of

deportability for which there is a comparable ground of exclusion. *Matter of Granados*, 16 I&N Dec. 726 (BIA 1979), *aff'd*, 624 F.2d 191 (9th Cir. 1980); *see also Matter of Wadud*, 19 I&N Dec. 182 (BIA 1984); *Matter of Salmon*, 16 I&N Dec. 734 (BIA 1978). This limitation can result in the total unavailability of relief from deportation for longtime resident aliens who, like the present respondent, may not have committed offenses nearly as serious as those of other aliens who are eligible for the section 212(c) waiver. In order to remedy this anomalous situation, we have today decided to extend the availability of section 212(c) to all grounds of deportability except sections 241(a)(6), (7), (17), and (19), which relate to subversives and war criminals.

In deciding to change our approach to section 212(c) waivers, we have considered that section 212(c) as currently applied bears little resemblance to the statute as written.[3] As written, the provision applies only in exclusion proceedings to lawful permanent residents "who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years." However, the Board has for many years allowed the granting of a section 212(c) waiver in deportation proceedings nunc pro tunc. *Matter of M-*, 5 I&N Dec. 598 (BIA 1954); *see also Matter of Edwards*, 10 I&N Dec. 506 (BIA 1963, 1964); *Matter of G- A-*, 7 I&N Dec. 274 (BIA 1956); *Matter of F-*, 6 I&N Dec. 537 (BIA 1955); *Matter of S-*, 6 I&N Dec. 392 (BIA 1954; A.G. 1955). This exception was in keeping with the allowance, as early as 1940, under the seventh proviso to section 3 of the Immigration Act of 1917, which was the predecessor to section 212(c), that relief could be had in deportation proceedings where an alien departed from the United States and returned after the ground of exclusion arose. *Matter of L-*, 1 I&N Dec. 1 (BIA, A.G. 1940).

In 1976, the availability of section 212(c) relief was significantly expanded when the United States Court of Appeals for the Second Circuit held that a section 212(c) waiver should be available regardless of whether the applicant had ever departed from the United States. *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976). The court held that "[f]undamental fairness dictates that permanent resident aliens who

---

[3] Section 212(c) of the Act provides as follows:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) through (25) and paragraphs (30) and (31) of subsection (a). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b).

are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner." *Id.* at 273. This Board decided shortly thereafter to adopt the approach of the Second Circuit nationwide. *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976). As former Board Member Appleman wrote in his concurrence in *Silva*, "[s]ection 212(c) has now been judicially rewritten and is a full deportation relief...."

It is thus evident that section 212(c) has long since been expanded to encompass many aliens not originally contemplated by the statute. We have concluded that the same fundamental fairness/equal protection arguments made in *Francis v. INS*, *supra*, can and should be invoked to make section 212(c) relief available to aliens deportable under any ground of deportability except those where there is a comparable ground of exclusion which has been specifically excepted from section 212(c). That is, since a 212(c) waiver is not available in exclusion proceedings to aliens who are excludable as subversives or war criminals, it would not be available in deportation proceedings to aliens deportable under sections 241(a)(6), (7), (17), and (19).[4] Having made the section 212(c) waiver, a form of relief ostensibly available only in exclusion proceedings, available in deportation proceedings, we find no reason not to make it applicable to all grounds of deportability with the exception of those comparable to the exclusion grounds expressly excluded by section 212(c), rather than limiting it, as now, to grounds of deportability having equivalent exclusion provisions. The two approaches are equally logical and bear equally little resemblance to the statute as written. Giving a broader application to the waiver, however, has the benefit of alleviating potential hardships to sometimes deserving aliens.

We recognize that this approach is in conflict with prior precedents of this Board. In *Matter of Granados*, *supra*, we considered whether section 212(c) should be extended to cover a ground of deportability (conviction for possession of a sawed-off shotgun) which is not also a ground of exclusion. We declined to do this, indicating that to allow it would make section 212(c) relief available to all deportability grounds, including the subversive grounds which were specifically excluded from 212(c). We also made reference to the plain language and legislative history of section 212(c).

On further contemplation, we find that the rationale of *Matter of Granados*, *supra*, is not sufficiently persuasive to prevent the change we now are making. There is no reason why section 212(c) would have

---

[4]Section 212(c) is also unavailable to foreign medical graduates. There is no comparable ground of deportation for foreign medical graduates. In any event, such aliens, along with nonimmigrants, would not be eligible for section 212(c) relief because they would not be lawful permanent residents.

to include the subversive grounds which were specifically excluded in the statute itself, and, as we have said, those grounds will not now be included. As to the language and legislative history of section 212(c), we simply find that, given the unusual history of section 212(c), and the long distance already travelled from the "plain language" of that statute, it makes little sense now to adhere to strict rules of statutory construction. In view of today's decision, we are withdrawing from the decision in *Matter of Granados, supra,* and from other decisions which likewise limited the availability of section 212(c). *See, e.g., Matter of Wadud, supra,* and cases cited therein.

Our new approach to section 212(c) is also somewhat in conflict with a recent decision of the United States Court of Appeals for the Ninth Circuit. *Cabasug v. INS,* 847 F.2d 1321 (9th Cir. 1988). That case involved an alien deportable under section 241(a)(14) of the Act for possession of a sawed-off shotgun. The court held that that ground of deportability could not be waived by section 212(c). In so holding, the court emphasized the very serious nature of the alien's offense, and the fact that Congress had in various contexts given special treatment to firearms offenses, and especially to those involving sawed-off shotguns. However, the court also concluded that Congress had intended that section 212(c) relief only be available to waive certain grounds of excludability under section 212 of the Act, and that it could not waive a ground of deportability for which there is no "substantially identical" ground for exclusion. *Id.* at 1326. Inasmuch as the present case does not arise in the Ninth Circuit, however, we are not bound by it here and will not apply *Cabasug* outside that circuit. We note that we find the court's reliance on congressional intent unpersuasive for the reasons outlined above.

Our decision today is not without support in case law. In *Marti-Xiques v. INS, supra,* the alien was charged with deportability under section 241(a)(2) for unlawful entry, but also under section 241(a)(13) for smuggling aliens for gain. The latter, having an equivalent under the exclusion statute, was considered a waivable offense under section 212(c). The court allowed the waiver, despite the nonwaivable entry without inspection charge. The court indicated its difficulty with the result if the entry without inspection charge could not be waived:

> While the purpose of the section is to allow forgiveness of offenses that are in many cases not serious enough to constitute grounds for deportation, INS construes the statute to permit forgiveness for the more serious offense, smuggling aliens, but to preclude forgiveness for the less serious offense, entering without inspection.

*Id.* at 1515. In order to avoid this result, the court held that "where an appellant is deportable under two grounds arising out of the same incident, section 212(c) permits waiver of an unenumerated ground if a more serious ground is an enumerated ground for waiver." *Id.* at

1516. In a footnote, the court referred to the strange history and interpretation of section 212(c):

> Our holding is somewhat at odds with the literal language of Sec. 212(c), which permits waiver as to enumerated grounds of exclusion. Section 212(c) makes no mention of waiver with respect to grounds of deportation. It also does not mention deportation proceedings. Despite this latter omission, INS interprets Sec. 212(c) to apply in deportation proceedings. *Cf.* Comment, [*Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act*, 47 U. Chi. L. Rev. 771, 774-75 n.19 (1980)] (arguing that section 212(c) should not apply in deportation proceedings). It strikes us as inconsistent for INS, on the one hand, to attribute no significance to Sec. 212(c)'s failure to mention deportation proceedings but, on the other hand, to argue that section 212(c)'s silence regarding grounds of deportation evinces an intent to preclude relief with respect to grounds of deportation that are not one of the enumerated grounds of exclusion. INS cannot have it both ways. If Sec. 212(c)'s failure to mention deportation proceedings generally has no significance, then its omission of any reference to grounds of deportation likewise has no significance.

*Id.* at 1516 n.5.

As mentioned above, the respondent in this case asks that the Service be required to charge him under section 241(a)(13), and he then urges us to adopt the holding of the court in *Marti-Xiques v. INS*, *supra*. We consider that decision to be a piecemeal approach to the problem before us which, if adopted, would likely raise new issues regarding which deportation grounds are "more serious" than others. Moreover, availability of section 212(c) relief under that decision depends upon which charges happen to be made in a case and would result in situations like the one before us, where the alien desires to have a more serious charge of deportability lodged against him, so he can apply for a section 212(c) waiver. Our approach seems a cleaner, simpler one.

In reaching our decision today, we have been ever mindful of the fact that section 212(c) is, in essence, a forgiveness statute. It allows a longtime lawful permanent resident to make a mistake, and to be forgiven for it in the immigration context, to keep his permanent resident status despite the mistake. It is a generous provision of the law and we believe that today's action is fully in keeping with its generous spirit. Moreover, we have been troubled by the fact that an alien convicted, for example, of a serious drug offense can be statutorily eligible for a section 212(c) waiver, but an alien who makes an unlawful entry into the United States, or one who fails to comply with the law's change of address requirements,[5] could not establish statutory eligibility for relief. We emphasize that our decision only relates to statutory eligibility, and that, as always, an applicant for a

---

[5] See sections 241(a)(5) and 265(a) of the Act, 8 U.S.C. §§ 1251(a)(5) and 1305(a) (1982).

section 212(c) waiver must also show that he merits the relief as a matter of discretion.

Since the immigration judge found the respondent ineligible for relief because of the charge of deportability brought against him, the respondent did not have an opportunity to establish that he was otherwise eligible for the waiver, and deserving of discretionary relief. A remand is therefore necessary to enable the respondent to fully present his application for a waiver under section 212(c) of the Act. Accordingly, the following orders will be entered.

**ORDER:**    The appeal is sustained insofar as it relates to the denial of a waiver under section 212(c) of the Act.

**FURTHER ORDER:**    The record is remanded to the immigration judge for further proceedings consistent with the foregoing decision.

*CONCURRING OPINION:* Michael J. Heilman, Board Member

I respectfully concur.

This decision to inject some rationality into the section 212(c) waiver process is overdue and sorely needed. For almost 13 years, the lawful permanent resident who entered without inspection was in a worse position than a permanent resident who had committed a serious felony under the Board and judicial decisions praised in the dissenting opinion. The lawful permanent resident who entered without inspection was ineligible for the 212(c) waiver on the curious ground that there was no "counterpart" to the entry without inspection provision in section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982), which could translate into some comparable provision found in section 212 of the Act, 8 U.S.C. § 1182 (1982).

The dissent makes much of the supposed violation of elementary rules of statutory construction and legislative history by the majority. For substantial reasons, it appears to me that reliance on statutory construction and congressional intent is basically of little assistance, if not completely irrelevant to any useful analysis of the section 212(c) waiver.

While the dissent may go back to 1953 to point out how this decision departs from previous interpretations, for all intents and purposes, the relevant history of section 212(c) began in 1976, with the decision in *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976), whose holding that a section 212(c) waiver was available in deportation proceedings, as well as in exclusion proceedings, was adopted by this Board in *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976). The Board apparently adopted the United States Court of Appeals for the Second Circuit interpretation

because the Immigration and Naturalization Service had decided, of its own accord, to apply the holding of *Francis v. INS, supra*, to its own section 212(c) adjudications on a nationwide basis. In a concurring opinion, one Board member acknowledged this reason for adoption of the *Francis* interpretation and stated that "[s]ection 212(c) has now been judicially rewritten." *Matter of Silva, supra*, at 31.

In the years that followed the decision to make the section 212(c) waiver available to lawful permanent residents in deportation proceedings, there were a number of attempts to define the limits of the waiver, and the formula that was finally settled upon by the Board was to limit the applicability of the waiver to deportation offenses which had a "comparable ground" under the exclusion provisions. *Matter of Wadud*, 19 I&N Dec. 182 (BIA 1984); *Matter of Granados*, 16 I&N Dec. 726 (BIA 1979), *aff'd*, 624 F.2d 191 (9th Cir. 1980). *Matter of Granados, supra*, stated that unless the waiver was limited to "comparable grounds" of exclusion, the waiver as applied to deportation proceedings would supposedly make that "relief available for all grounds of deportability including the subversive grounds," resulting in a violation of the "plain language or the legislative history of section 212(c)." *Id.* at 728.

In the view of the dissenting members, this transgression has now occurred in the majority's opinion. This transgression, however, occurred 14 years ago in *Matter of Silva, supra*. If the dissenters were truly concerned with statutory construction and legislative intent, they would have to actually go further than they do. They would have to call for abandonment of the applicability of the section 212(c) waiver to deportation proceedings and the overruling of *Matter of Silva, supra*, and all of the decisions that followed.

Anyone who invokes principles of statutory construction and legislative history in a discussion of section 212(c) at this point cannot present any logical and coherent argument for partial adoption of the waiver to deportation proceedings. As was noted in a recent judicial decision, "On its face, the statute has no application in the case before us." *Cabasug v. INS*, 847 F.2d 1321, 1324 (9th Cir. 1988). That "case" was, as here, a deportation proceeding in which a section 212(c) waiver was sought. This is certainly true, as section 212(c) in its "clear and unambiguous" language, as the dissent describes it, applies only to a lawful permanent resident who "temporarily proceeded abroad voluntarily" and who is "returning to a lawful unrelinquished domicile of seven consecutive years." No such circumstances exist in this appeal, and this is not an exclusion proceeding.

Since section 212(c) is clear on its face, as a general rule of statutory construction, no inquiry into congressional intent would be required, unless the language led to a bizarre or irrational result. *See Rector of*

*Holy Trinity Church v. United States*, 143 U.S. 457 (1892). No argument has been presented by the dissent that the language of section 212(c) requires us to refer to the legislative history of section 212(c), but the dissent does so anyway and presents that legislative history as corroboration for its interpretation of congressional intent. That legislative history, however, proves only that the waiver was meant to apply in exclusion proceedings, an elementary fact that provides no useful evidence that barring the waiver to an alien who enters without inspection is mandated.

It appears to me that the dissent suffers from the handicap that meets any legal analysis that attempts to limit the coverage of a statutory provision once its most elementary and basic substance has been abandoned. Here, we have the overriding fact that the waiver was meant to waive grounds of exclusion, not deportation. Second, we have the indisputable fact that this limitation has been abandoned by judicial and administrative choice. As the core of this waiver has been jettisoned, any reference to congressional intent has become basically irrelevant. Since Congress clearly never intended to provide this waiver to anyone other than an applicant for admission, it could hardly be said to have any intent whatsoever in regard to persons in deportation proceedings.

The dissent, though, does not advocate returning to the actual statute, and applying it solely to applicants for admission in exclusion proceedings. It chooses to limit this waiver so that it is not available to lawful permanent residents who enter without inspection. The legislative history provides no justification for this choice. The statute itself offers no authority for this, either. It is true that the exclusion provisions do not refer to an offense characterized as entry without inspection. This is hardly a portentous silence, because the offense by its very nature is accomplished by an alien who has entered and cannot be committed by one who has not. An alien in exclusion proceedings is by definition an alien who has not entered the United States and so cannot logically have committed the offense of entry without inspection. That is the reason Congress could not legislate such an offense as a ground of exclusion under section 212 of the Act. If Congress could not do so in the only context it was dealing with, aliens who had left and were seeking admission, no significance can be drawn from the fact that it did not do so.

In addition, the decision the dissent would continue to apply, *Matter of Granados, supra*, actually and somewhat ironically, fails the dissent's own standards when measured against the statutory construction and legislative intent tests. In *Matter of Granados, supra*, the stated reason for adopting the "counterpart" test was to insure that the waiver, when applied to deportation proceedings, would not exceed

the scope of that applied in exclusion proceedings, in particular, so that it could not waive the so-called "subversive" grounds, which Congress had explicitly exempted from waiver. This was simply a matter of picking and choosing what portions of the statute would be given effect and which would not. Indeed, the clear implication of that decision is that the Board could or would have adopted the interpretation apparently proposed in *Matter of Granados, supra*, if this overextension had not been feared.

Also, and of no small importance, the assumption underlying *Matter of Granados, supra*, that an interpretation which could waive a conviction for possession of a sawed-off shotgun would compel waiver of the "subversive" deportation grounds, was entirely bogus, as the majority decision recognizes today. Whether or not there is a "counterpart" exclusion provision for possession of a sawed-off shotgun, or as here, for entry without inspection, there is a "counterpart" provision for the "subversive" exclusion grounds in the deportation provisions. To the extent, then, that one wished to comply with any vestigial congressional intent, once section 212(c) had been essentially trashed, one could with complete clarity conclude that Congress did not intend to waive the "subversive" grounds of exclusion and simply parallel that by barring waiver of the "subversive" deportation grounds. With this new approach, one can with confidence avoid according a benefit to categories of aliens Congress clearly did not intend to benefit when it wrote the waiver provision and avoid the supposed pitfall of extending it in the manner *Matter of Granados, supra*, found so alarming.

No one can know what Congress intended to do in the case of a lawful permanent resident alien who had entered without inspection, because it was not concerned with such an individual in the context of exclusion proceedings, and so the dissent's invocation to congressional intent is the rankest guesswork. And it is guesswork that rather defies plausibility. To adopt the position that a lawful permanent resident is to be deprived of his status because of an entry without inspection is to assume that when confronted with this possibility Congress would treat this person as more despicable and more of a threat to the United States than a drug dealer or murderer, who may apply for a waiver because of "counterpart" exclusion provisions. Or to refer to another provision of the immigration laws, one would have to believe that an entry without inspection is worse conduct than smuggling in a relative or friend for no monetary gain. A lawful permanent resident who does this is not even deportable under section 241(a)(13) of the Act. But a long-term permanent resident who goes to Mexico for a weekend, loses or forgets his "green card," whose admission is denied by an immigration inspector, who then crosses the border without inspection

to get back to his job and family, is to lose his permanent resident status and be deported.

I would readily concede that very little that has been done in regard to section 212(c) in the past 13 years may be justified by reference to statutory construction or legislative intent and would even concede that we are dealing with an administratively and judicially concocted creature. As this is so, it seems to me it is necessary for this concoction to pass some elementary tests of rationality and fairness. The majority approach does this. It allows the section 212(c) waiver to be granted to a lawful permanent resident alien who has entered without inspection, the most common and most de minimis of the acts which render a person deportable. On the other hand, it bars this waiver to the only persons Congress specifically barred when it first enacted this much-mangled and sorely battered provision.

*DISSENTING OPINION:* Fred W. Vacca, Board Member

I respectfully dissent.

The respondent in these proceedings was charged with a single ground of deportability, i.e., entry without inspection. His deportability under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982), was established at his deportation hearing by clear, unequivocal, and convincing evidence. The immigration judge ordered that the respondent be deported from the United States to Mexico after properly finding that he was statutorily ineligible for any form of discretionary relief.

On appeal, the respondent argues, inter alia, that, as an alien with a record of lawful permanent residence beginning in 1967, he is eligible for a waiver of inadmissibility under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1982). Fortunately for the respondent, but unfortunately for the state of the immigration laws, the majority of the members of the Board of Immigration Appeals agrees with the respondent and thereby sustains his appeal. In so doing, the majority, in one fell swoop, abandons a number of Board precedent decisions dating back to 1953 which hold a contrary view of the law. In its decision the majority seeks to justify its erroneous conclusion as to respondent's eligibility for section 212(c) relief by suggesting that its decision was prompted by considerations of "fundamental fairness" and "equal protection." The majority also points to the "forgiveness" purpose of section 212(c) and declares that its decision is "fully in keeping with its [the statute's] generous spirit." While I do not challenge my colleagues' assessment that the purpose of the section 212(c) waiver provision is to forgive, nor do I fault them for their admirable concern for fairness and equality, I must strongly disagree

273

with the majority's cavalier construction of the statute and its blatant disregard for the intent of Congress.

Clearly, the issue before me is whether Congress intended that aliens who are deportable because of an entry into the United States without inspection are within a class that may be eligible under section 212(c) for a waiver of inadmissibility.

Inherent in the process of adjudicating an appeal which raises a question of legislative intent is the necessity for closely examining the specific language of the statute as well as its history. It is only in that way that we can achieve an understanding of the statute's meaning and gain insight into the intent of Congress. Section 212 of the Act applies to the general classes of aliens who are ineligible to receive visas and who are excluded from admission. That section also pertains to various waivers of inadmissibility. Section 212(c) provides as follows:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) through (25) and paragraphs (30) and (31) of subsection (a). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b).

Under the provisions of this section, the Attorney General or his delegates may, as a matter of administrative discretion, waive one or more grounds of exclusion. There are 33 grounds of exclusion enumerated in section 212(a). Section 212(c) provides that the grounds described in paragraphs (1) through (25) and (30) and (31) may be waived, but that the grounds listed in paragraphs (26) through (29) and (32) and (33) may not be waived. The unwaivable grounds generally affect public safety or national security. The alien seeking a waiver under section 212(c) must establish that he is lawfully admitted for permanent residence, that he temporarily proceeded abroad voluntarily and not under an order of deportation, and that he is returning to a lawful unrelinquished domicile of 7 consecutive years. Before the Attorney General may exercise his discretionary authority, he must be satisfied that the standards set forth by the Congress in the statute have been met. Stated in different terms, the applicant for a waiver of inadmissibility must establish his statutory eligibility for the relief.

To determine congressional intent, I have examined the statute for clarity, preciseness of meaning, absence of ambiguity or vagueness, and certainty of purpose. Upon examination, I find that section 212(c) is well constructed and that its language is clear and unambiguous. There is certainty and preciseness as to which classes of excludable aliens may seek a waiver and which classes may not. Further, the requirements for eligibility for the waiver are set forth expressly in

understandable and unambiguous terms. Without equivocation, I find that section 212(c) is a section of the Act that pertains to exclusion of aliens. The classes of aliens described in section 212(a) are excludable classes. The waivers described in section 212(c) and other subsections of section 212 refer to aliens who are in excludable classes. The grounds of deportability are not in section 212(a). The general classes of deportable aliens are enumerated and described in section 241 of the Act. A comprehensive reading of the Act leads me to the inescapable conclusion that Congress intended that exclusion and deportation proceedings should be separate and distinct proceedings and that the classes of excludable aliens and deportable aliens should also be considered as separate and distinct entities. Accordingly, I find no language, express or implied, in section 212(c) that describes or refers to classes of deportable aliens. Specifically, I find no language, express or implied, in section 212(c) which describes the class of deportable aliens who enter the United States without inspection. If Congress meant to include such a class, it is not apparent from a plain reading of the statute.

The ordinary and obvious meaning of a phrase is not to be lightly discounted. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *see also Russello v. United States*, 464 U.S. 16, 21 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 198-99 (1976). Not only do strict rules of statutory interpretation hold that the plain language of the statute controls its application, but the Supreme Court has held and reaffirmed with regard to this statutory scheme that it is bound to assume that the legislative purpose is expressed by the ordinary meaning of the words used. *INS v. Phinpathya*, 464 U.S. 183, 189 (1984) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982), in turn quoting *Richards v. United States*, 369 U.S. 1, 9 (1962)). It is an axiom of statutory construction that the duty of a court "is to construe a statute consistent with the intent of Congress as expressed in the plain meaning of its language." *Sutton v. United States*, 819 F.2d 1289, 1292 (5th Cir. 1987). "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940). The United States Supreme Court has noted on numerous occasions that "in all cases involving statutory construction, 'our starting point must be the language employed by Congress' ... and we assume 'that the legislative purpose is expressed by the ordinary meaning of the words used.'" *American Tobacco Co. v. Patterson, supra* (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337 (1979), and *Richards v. United States, supra*). The "plain meaning" of the words used in a statute must be given effect. *See INS v. Phinpathya, supra.*

Throughout its decision, the majority consistently has ignored the guideposts of statutory construction. It consistently confuses how the statute reads with how the statute *ought* to read. In effect, the majority has rewritten section 212(c) in this case in order to satisfy its own sense of fairness, thereby throwing reasonable and judicially accepted standards of statutory construction to the winds. "Where the language and intent of the statute is [sic] clear, courts are without the authority to engage in any creative rewriting of a provision." *Reed v. United States,* 743 F.2d 481, 484 (7th Cir. 1984), *cert. denied,* 471 U.S. 1135 (1985); *see also United States v. Mayo,* 721 F.2d 1084, 1093 (7th Cir. 1983). In the instant case, the language chosen by Congress in section 212(c) is clear and unambiguous and its intent is unmistakable.

In its decision the majority declares "on further contemplation" that "[a]s to the language and legislative history of section 212(c), we simply find that given the unusual history of section 212(c), and the long distance already travelled from the 'plain language' of that statute, it makes little sense here to adhere to strict rules of statutory construction." The operative word in the above quotation is "simply." The majority has indeed "simply" ignored the plain meaning of the statute. The majority has also "simply" ignored the legislative history of the statute. Had the majority diligently studied the congressional reports and historical documents, it would find little solace or support for its "new approach to section 212(c)." The following is an excerpt from a section of the legislative history of the Immigration and Nationality Act of 1952 entitled "Discretionary Authority":

> Having concluded that failure by an alien to meet the strict qualitative tests will disqualify him for admission to the United States, the committee is of the opinion that any discretionary authority *to waive the grounds for exclusion* should be carefully restricted to those cases where extenuating circumstances clearly require such action and that the discretionary authority should be surrounded with strict limitations.
>
> Under present law, in the case of an alien returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years, he may be admitted in the discretion of the Attorney General under such circumstances as the Attorney General may prescribe.
>
> Under existing law the Attorney General is thus empowered *to waive the grounds of exclusion* in the case of an alien returning under the specified circumstances even though the alien had never been lawfully admitted to the United States. The comparable discretionary authority vested in the Attorney General in section 212(c) of the bill is limited to cases where the alien has been previously admitted for lawful permanent residence and has proceeded abroad voluntarily and not under order of deportation. Under existing law and under the bill, in no case may the discretion be exercised where the alien is excludable on grounds of public safety or security or as a subversive under paragraphs (27), (28), or (29) of section 212(a).

H. R. Rep. No. 1365, 82d Cong., 2d Sess., *reprinted in* U.S.C.C.A.N. 1653, 1705-06 (emphasis added).

The legislative history of section 212(c) is clear and succinct in its message that Congress intended to empower the Attorney General to waive *grounds of exclusion.* If Congress had intended to include grounds of deportability in the waiver provision, neither the language of the statute nor its legislative history gives a clue or hint of such intent. Even if a hypothesis were to be fashioned (as the Board has done in other cases) to suggest that Congress intended that a ground of deportability could be waived under section 212(c) if it were equivalent in nature and effect to a ground of exclusion, the application in this case would fail "simply" because entry without inspection has no statutory equivalent or counterpart among the grounds of exclusion. While the majority postures that "it makes little sense now to adhere to strict rules of statutory construction," it is evident that its statutory analysis is not "simply" flawed but virtually nonexistent. "Simply" put, the conclusion of the majority cannot be supported by a strict or an expansive interpretation of section 212(c).

Virtually 37 years have passed since the Board's first precedent decision interpreting the applicability of certain grounds of deportability to section 212(c) waivers. In *Matter of T-,* 5 I&N Dec. 389, 390 (BIA 1953), the Board held:

> The charge contained in the warrant of arrest, to wit: That the respondent entered in violation of the act of February 5, 1917, in that she entered by means of false and misleading statements thereby entering without inspection, is not contained in paragraphs (1) through (25) or paragraphs (30) and (31) of subsection (a) of section 212 of the Immigration and Nationality Act. The "entry without inspection" ground of deportation appears in section 241(a)(2) of the Immigration and Nationality Act. In view of the specification in section 212(c) of the particular sections to which this discretion may be directed, we do not believe that a ground not enumerated therein can be the object of this form of discretionary relief. We therefore find that section 212(c) is inappropriate to waive the ground of deportability set forth in the warrant of arrest, nor is the respondent helped in any way by the documentary waiver for which she would have been eligible if she had regularly presented herself for inspection. We find the ground of deportability still exists and we are therefore unable to terminate these proceedings.

Similarly, the Board held in *Matter of M-,* 5 I&N Dec. 642, 647 (BIA 1954) that "section 212(c) does not contain authority to waive the respondent's entry without inspection, which is a ground of deportation under section 241(a)(2) but not a ground of excludability."

In *Matter of Granados,* 16 I&N Dec. 726, 728-29 (BIA 1979), *aff'd,* 624 F.2d 191 (9th Cir. 1980), the Board held:

> In the present case, however, the respondent seeks the expansion of section 212(c) relief to a ground of deportation which is not a ground of excludability listed under section 212(a) of the Act. Conviction for possession of a concealed sawed-off shotgun is not a specified section 212(a) ground of excludability, nor a crime involving moral turpitude that would render the respondent excludable under section 212(a)(9) of the

277

Act. See *United States ex rel. Andreacchi v. Curran*, 38 F.2d 498 (S.D.N.Y. 1926); *Ex parte Saraceno*, 182 F. 955 (S.D.N.Y. 1910).

We do not reach the respondent's contention that his conviction constitutes a ground of excludability because if deported he would thereafter be immediately excludable. He would be excludable under section 212(a)(17) of the Act because of his deportation, not because of the underlying conviction. However, assuming for the purpose of discussion that the conviction for shotgun possession constitutes some sort of exclusion ground per se, under section 212(a) generally, it is not within the ambit of section 212(c). To adopt the respondent's reasoning would make section 212(c) relief available for all grounds of deportability including the subversive grounds, section 212(a)(27) to (29) of the Act, which were specifically precluded from section 212(c) relief. We see nothing in the plain language or the legislative history of section 212(c) justifying extending such administrative relief beyond the grounds listed under that section. See S. Rep. No. 1137, 82d Cong., 2d Sess. (1952); H.R. Rep. No. 1365, 82d Cong., 2d Sess. (1952); U.S. Code Cong. & Adm. News 1952, pp. 1653, 1705.

Therefore, we conclude that the respondent's conviction for possession of an unregistered sawed-off shotgun does not come within the grounds of excludability which are subject to a section 212(c) waiver. (Footnote omitted.)

Upon an analysis of the Board's precedent decisions spanning almost 4 decades, I find them well reasoned, consistent, and solidly based in law and fact. There is indeed no administrative support in these decisions for the majority's approach in this case. The majority would, however, overrule these decisions because they are inconsistent with its current approach. That approach, I might add, has no support in the statute or the legislative history or in the courts, as I will demonstrate later.

The majority's approach follows two lines of reasoning. The first line is that fairness and equal protection dictate that aliens who are deportable on various grounds should be permitted to seek a waiver of inadmissibility under section 212(c) under the same terms as certain aliens who are excludable under the statute. The majority, however, does not conclude that the statute is violative of the constitutional right of equal protection of certain aliens, nor does it espouse the view that Congress did not intend disparate treatment for separate and distinct classes of aliens, i.e., excludable aliens and deportable aliens. I find that fairness and equal protection are not the issues in this case since Congress, acting under the authority of a sovereign government to create laws affecting immigration, may create different classes of aliens and provide different procedures and remedies for each class.

The second line of reasoning expressed by the majority follows the notion that section 212(c) has been interpreted by the courts and by the Board in various ways over the years so that "as currently applied [it] bears little resemblance to the statute as written" and therefore lends itself to an expansive interpretation under the facts of this case. I find this reasoning specious because the majority has yet to identify

the authoritative basis for its "new" interpretation. The fact that the statute has undergone various interpretations does not, by itself, justify a misinterpretation or an interpretation which has no foundation in the statute or in case law.

Since the enactment of the Immigration and Nationality Act of 1952, there has been no significant initiative on the part of Congress to amend the substantive provisions of section 212(c). Likewise, extremely few federal courts have addressed the issue posed in this case. However, the Board's decision in *Matter of Granados, supra,* was affirmed in a table case by the United States Court of Appeals for the Ninth Circuit in *Granados-Gonzalez v. INS,* 624 F.2d 191 (9th Cir. 1980). The issue was also discussed, but not decided, in *Gutierrez v. INS,* 745 F.2d 548 (9th Cir. 1984). In *Gutierrez,* the alien was charged with deportability under both section 241(a)(11), and under section 241(a)(2) for unlawful entry. The court noted that it was a "difficult constitutional issue" whether fifth amendment due process equal protection requires that section 212(c) relief be available for aliens deportable for entry without inspection. The court thus clearly implied that perhaps it should be made so available, but it specifically declined to decide that issue. Thus the suggestion in *Gutierrez* was obviously dictum. Four years later the Ninth Circuit addressed the issue and decided it in *Cabasug v. INS,* 847 F.2d 1321 (9th Cir. 1988). In *Cabasug,* the alien was deportable under section 241(a)(14) of the Act for possession of a sawed-off shotgun. The court held that that ground of deportability could not be waived by section 212(c). In so holding, the court concluded that Congress had intended that section 212(c) relief only be available to waive certain grounds of excludability under section 212 of the Act, and that it could not waive a ground of deportability for which there is no "substantially identical" ground of exclusion. While the court in *Cabasug* did not address an entry without inspection charge, it used broad language which limited section 212(c) availability to grounds of deportation which have equivalents under the section 212 exclusion grounds. Moreover, the court specifically stated that it was reaching the constitutional issue it had reserved in *Gutierrez v. INS, supra,* a case which did involve an entry without inspection charge. The court concluded in *Cabasug* as follows:

> Appellant would have us hold that the INS, rather than Congress, has created an arbitrary distinction by its refusal to extend § 1182(c) discretion to all grounds for deportation except those explicitly excluded in § 1182(c). This is merely a rhetorical device to avoid an explicit challenge to the statute. Congress, as explained above, clearly expressed its intention that § 1182(c) relief applies only to § 1182, the exclusion statute. The *Francis* and *Tapia-Acuna* decisions held that this distinction, in combination with the administrative practice of applying the exclusion statute *nunc pro tunc* to aliens who had previously traveled outside the country, violated the

> Constitution insofar as it required different treatment for drug offenses covered under both the exclusion and deportation statutes. We are not about to overturn an Act of Congress under the pretense that we are merely correcting an administrative aberration.

*Cabasug v. INS, supra,* at 1326.

In the majority's decision it states that its "new approach to section 212(c) is *somewhat in conflict* with" the *Cabasug* decision. (Emphasis added.) I would submit that the majority's approach is clearly and completely in conflict with *Cabasug.* I also find that *Marti-Xiques v. INS,* 713 F.2d 1511 (11th Cir. 1983), a decision advanced by the majority to support its decision, is factually and legally distinguishable from this case. In *Marti-Xiques,* the alien was charged with two grounds of deportability arising out of the same incident, i.e., entry without inspection and alien smuggling, the latter having a statutory equivalent in section 212(c). In this case, the alien was only charged with entry without inspection which, as previously stated, has no counterpart in the enumerated grounds of exclusion under section 212(c). In view of this important distinction between the two cases, I find little support in *Marti-Xiques* for the majority's approach. Moreover, the decision in *Marti-Xiques* was vacated and hence is no longer the law of the jurisdiction in which it was decided. *See Marti-Xiques v. INS,* 724 F.2d 1463 (11th Cir. 1984).

Throughout this decision, I have attempted to show the inherent weaknesses in the rationale of the majority. Above all, it should be quite clear that there is virtually no authoritative support for the majority's approach. The majority has boldly invaded the province of the Congress and for that there is no excuse. Accordingly, for the foregoing reasons, I would dismiss the respondent's appeal.

*DISSENTING OPINION:* James P. Morris, Board Member

I concur in the foregoing dissenting opinion.

### BEFORE THE ATTORNEY GENERAL
(March 18, 1991)

The Immigration and Naturalization Service ("INS") has requested that I review the decision of the Board of Immigration Appeals ("the Board" or "BIA") in *In re: Joel Hernandez-Casillas,* No. A17 963 863 (Jan. 11, 1990) ("Board Opinion"), in which the Board held that a permanent resident alien who left the United States and then reentered illegally must be afforded the opportunity to seek discretionary relief from deportation under section 212(c) of the Immigration and

Nationality Act ("INA").[1] For the reasons set forth below, I disapprove the Board's decision.

## I.

1. The respondent, Joel Hernandez-Casillas, a citizen of Mexico, was admitted to the United States in 1967 as a permanent resident alien. On April 13, 1985, the respondent was arrested by border patrol agents after he reentered the United States by wading the Rio Grande River; the respondent was observed guiding a group of illegal aliens whom he planned to transport to the Austin, Texas area for a fee. *See* Decision of the Immigration Judge, *In the Matter of Joel Hernandez-Casillas*, No. A17 963 863 (March 14, 1986) ("Immigration Judge's Opinion") at 1; Board Opinion at 1-2. The respondent was charged with violating 8 U.S.C. § 1325(a), which proscribes entry into the United States "at any time or place other than as designated by immigration officers." *See* Immigration Judge's Opinion at 1-2. The respondent pled guilty to that charge and was convicted.

2. On April 13, 1985, the INS served the respondent with an order to show cause why he should not be deported pursuant to 8 U.S.C. § 1251(a)(2), which requires the deportation of any alien who has "entered the United States without inspection." Immigration Judge's Opinion at 1.[2] The respondent contested the order to show cause in a deportation proceeding before an immigration judge. *See* 8 U.S.C. § 1252(b). In that proceeding, the respondent sought discretionary relief under section 212(c), which states that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1)-(25), (30), and (31) of subsection (a) of this section.

8 U.S.C. § 1182(c).[3]

---

[1] While this appeal was pending, Congress enacted the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 (1990) ("1990 Act"). The 1990 Act will not affect the conclusions set forth herein, which will retain their general applicability to future cases. The 1990 Act, in particular, does not alter the substantive law that I must apply in this appeal. *See id.* § 602(d) (reorganization of grounds for deportation in INA § 241(a), 8 U.S.C. § 1251(a), "shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991"). Accordingly, all citations herein are to the INA as it existed prior to enactment of the 1990 Act.

[2] The INS did not charge the respondent with deportability on the ground of aiding another alien to enter illegally. *See* 8 U.S.C. § 1251(a)(13). *Cf. infra* p. 3.

[3] Congress took the language of section 212(c) from the Seventh Proviso to section 3 of the Immigration Act of 1917, 39 Stat. 878 (1917), which was intended "as a 'humane' provision 'to permit the readmission to the United States ... of aliens who have lived here for a long time and whose exclusion after a temporary absence would result in

By its terms, section 212(c) authorizes the Attorney General, in his discretion, to permit a permanent resident alien to reenter the United States after a brief trip abroad, even though the alien would otherwise come within certain of the statutory grounds for exclusion from this country listed in section 212(a)—i.e., grounds upon which the INS otherwise must bar an alien from entering the United States.[4] The only grounds for exclusion for which discretionary relief is unavailable under section 212(c) are those that concern the exclusion of undocumented nonimmigrants, *id.* § 1182(a)(26), followers of totalitarian ideologies, *id.* § 1182(a)(27)-(29), and graduates of unaccredited medical schools who "are coming to the United States principally to perform [medical] services," *id.* § 1182(a)(32). In cases involving exclusion based upon these grounds, the Attorney General has no discretion and must exclude.

3. Although section 212(c) refers only to discretionary relief from grounds for *exclusion*, the Board, through a series of administrative decisions, has extended section 212(c) to authorize discretionary relief from grounds for *deportation* as well—i.e., grounds upon which the INS must remove an alien from this country. In *Matter of Granados,* 16 I. & N. Dec. 726, 728 (BIA 1979), the Board held that discretionary relief under section 212(c) may be afforded in deportation cases "if [the] ground for deportation is also a ground of inadmissibility [i.e., exclusion]" that may be waived by the Attorney General under section 212(c).

Applying *Granados* to this case, the immigration judge below denied the respondent's application for discretionary relief under section 212(c), because the ground for deportation asserted here—illegal entry—is not also a ground for exclusion made waivable by section 212(c). Immigration Judge's Opinion at 5.

4. On appeal to the Board, the respondent argued that the INS should be required to charge him with aiding another alien to enter the

---

peculiar or unusual hardship," S. Rep. No. 352, 64th Cong., 1st Sess. 6 (1916) (quoting S. Rep. No. 355, 63rd Cong., 2d Sess. 6 (1914)).

[4]Section 212(a) of the INA sets forth thirty-three grounds upon which an alien may be excluded from the United States. 8 U.S.C. § 1182(a). A separate section lists twenty grounds upon which an alien may be deported. *Id.* § 1251(a). The grounds for exclusion overlap substantially with those for deportation. *Compare, e.g., id.* § 1182(a)(9) (exclusion upon prior conviction of crime involving moral turpitude) *with id.* § 1251(a)(4) (deportation upon conviction of crime involving moral turpitude within five years of entry). The grounds for deportation and exclusion are not identical, however. Some grounds for exclusion have no analogue in the grounds for deportation. *See, e.g., id.* § 1182(a)(4), (6), (11) (exclusion based upon sexual deviance, contagious disease, or polygamy). Similarly, two grounds for deportation have no analogue in the grounds for exclusion. *See id.* § 1251(a)(2) (illegal entry) & (14) (conviction of illegal possession of certain firearms).

United States illegally—an offense that is a ground for both deporta-
tion and exclusion. *See* 8 U.S.C. §§ 1182(a)(31) & 1251(a)(13). The
respondent further urged the Board to hold that where an alien is
deportable under two grounds arising out of the same incident, section
212(c) permits the waiver of a ground not listed therein if the "more
serious" ground would be waivable under that section. Board Opinion
at 3.[5]

5. The Board concluded that the respondent was entitled to seek
discretionary relief under section 212(c), but rejected the respondent's
reasoning:

> [The respondent's position is] a piecemeal approach to the problem ... which, if
> adopted, would likely raise new issues regarding which deportation grounds are
> "more serious" than others. Moreover, availability of section 212(c) relief under [the
> respondent's position] depends upon which charges happen to be made in a case and
> would result in situations like the one before us, where the alien desires to have a
> more serious charge of deportability lodged against him, so he can apply for a section
> 212(c) waiver. *Id.* at 8. Instead, the Board opted for what it described as a "cleaner,
> simpler" solution, holding that discretionary relief under section 212(c) is available
> in *all* deportation cases, except where the ground for deportation is also a ground for
> exclusion that the Attorney General may not waive under section 212(c). *Id.*

The Board described its holding as an extension of the many
administrative and judicial interpretations of section 212(c). The
Board noted that discretionary relief under section 212(c) has long
been available in deportation cases understood by the Attorney
General and the Board to be the equivalents of exclusion proceedings.
For example, when the INS has inadvertently permitted a permanent
resident alien to reenter this country notwithstanding his excludability

---

[5] The respondent based this argument upon the reasoning in a vacated opinion of the
Eleventh Circuit. *See Marti-Xiques v. INS*, 713 F.2d 1511 (11th Cir. 1983). The alien in
*Marti-Xiques* was convicted of two offenses warranting deportation: entering without
inspection, 8 U.S.C. § 1251(a)(2), and knowingly aiding another alien to enter in
violation of law, *id.* § 1251(a)(13). *See* 713 F.2d at 1513. The alien sought discretionary
relief under section 212(c), but the INS denied his application based upon *Granados*.
Specifically, the INS reasoned that illegal entry was a ground for deportation that has no
counterpart among the grounds for exclusion. Accordingly, section 212(c) provided no
authority to waive this ground, notwithstanding that the related charge of aiding another
alien to enter illegally would have been waivable as a ground for both deportation and
exclusion. *See supra* p. 3. The Board affirmed the INS's decision. 713 F.2d at 1513,
1515.
On review, the Eleventh Circuit reversed, holding that where an alien "is deportable
under two grounds arising out of the same incident, Sec. 212(c) permits waiver of an
unenumerated ground [i.e., one not listed in section 212(c)] if a more serious ground is
an enumerated ground for waiver." *Id.* at 1516. Upon granting a petition for rehearing,
however, the court vacated its opinion, *Marti-Xiques v. INS*, 724 F.2d 1463 (11th Cir.
1984), and subsequently decided the case in favor of the INS on the ground that the alien
had failed to satisfy the seven year residency requirement in section 212(c), *Marti-
Xiques v. INS*, 741 F.2d 350 (11th Cir. 1984).

and, upon discovery of its error, has initiated deportation proceedings, the Attorney General and the Board have determined that the alien should not be placed in a worse position than if he had been excluded. In such cases, the Attorney General and the Board have permitted the alien to raise any claim for discretionary relief that the alien otherwise could have raised had he been excluded. *See Matter of S—*, 6 I. & N. Dec. 392 (BIA 1954; A.G. 1955); *Matter of G— A—*, 7 I. & N. Dec. 274 (BIA 1956); Board Opinion at 4.[6]

The Board further noted that, since a Second Circuit decision in 1976, relief under section 212(c) has been available in certain deportation proceedings in addition to those considered to be the equivalents of exclusion proceedings. *See* Board Opinion at 4-5. In *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976), the Board had entered an order of deportation against a permanent resident alien based upon his conviction in this country for possession of marijuana. *Id.* at 269. Under the INA, such a conviction is a ground for both deportation and exclusion. *See* 8 U.S.C. §§ 1182(a)(23)(A) & 1251(a)(11). The Second Circuit framed the issue as follows:

> Under present Board interpretations [of section 212(c)], a lawfully admitted alien, convicted of a narcotics offense, who departs from and returns to the United States to an unrelinquished domicile of seven years may be permitted to remain in this country in the Attorney General's discretion. On the other hand, the Attorney General is without discretion to allow petitioner, a lawfully admitted alien convicted of a narcotics offense, to remain in the United States despite an unrelinquished domicile of more than seven years solely because he has never made a temporary departure from this country since the time of his conviction.

532 F.2d at 269. Relying upon the guarantee of equal protection that

---

[6]Both *Matter of S—* and *Matter of G— A—* built upon an earlier opinion of Attorney General Jackson, who had accorded similar relief under the predecessor provision to section 212(c). *See Matter of L—*, 1 I. & N. Dec. 1 (A.G. 1940). The INS urges me to reconsider these decisions. *See* Commissioner's Request to the Board for Referral to Attorney General for Review, *In the Matter of Joel Hernandez-Casillas* (March 7, 1990) ("INS Referral") at 7. For the reasons set forth below, however, I decline to do so. *See infra* p. 8.

Discretionary relief under section 212(c) also has been available in one additional situation considered to be the equivalent of exclusion: deportation proceedings in which an alien calls upon the Attorney General to grant him a discretionary adjustment of status under section 245(a). *See* 8 U.S.C. § 1255(a) (Attorney General may adjust status of alien "to that of an alien lawfully admitted for permanent residence" if, *inter alia*, the alien "is admissible to the United States for permanent residence"); *Matter of Smith*, 11 I. & N. Dec. 325, 326-27 (BIA 1965) ("[a]n applicant for adjustment of status under section 245 stands in the same position as an applicant who seeks to enter the United States"). The record here, however, contains no suggestion that the respondent sought a discretionary adjustment of status under section 245(a) at any time. *See infra* note 16 (remand not necessary to afford the respondent an opportunity to request relief under section 245(a), because the respondent is ineligible for such relief).

the Supreme Court has held to be implicit in the due process clause of the Fifth Amendment, *see Bolling v. Sharpe*, 347 U.S. 497 (1954), the Second Circuit accepted the contention that section 212(c) "creates two classes of aliens identical in every respect except for the fact that members of one class have departed and returned to this country at some point after they became deportable." 532 F.2d at 272. Given that "[t]he government ha[d] failed to suggest any reason" to support this distinction, the court held that section 212(c), as applied, lacked even the rational basis necessary to pass minimal scrutiny under the Fifth Amendment. *Id.* at 273. The Board subsequently adopted the Second Circuit's reasoning in *Francis*, without further elaboration upon the court's equal protection analysis. *See Matter of Silva*, 16 I. & N. Dec. 26, 29-30 (BIA 1976); Board Opinion at 5. As a result of *Francis* and *Silva*, discretionary relief under section 212(c) became available for all grounds for deportation that also are grounds for exclusion made waivable by the terms of that section.

In *Matter of Granados, supra*, the Board indicated that *Francis* and *Silva* represented the limit of its expansion of section 212(c) to deportation cases. The Board noted that "*Francis* expanded the class of aliens to whom section 212(c) relief is available [*viz.*, to deportable aliens who have not temporarily departed from the United States] but did not increase the statutory grounds to which section 212(c) relief may be applied." 16 I. & N. Dec. at 728. Because section 212(c), by its terms, permits the Attorney General to waive only particular grounds for exclusion, the Board reasoned that section 212(c) may not be used to obtain discretionary relief from "a ground of deportation which is not a ground of exclu[sion] listed under section 212(c) ...." *Id.*

In the present case, however, the Board overruled its holding in *Granados* by reading section 212(c) as if it referred to the grounds for deportation set forth in section 241(a) as well as to the grounds for exclusion listed in section 212(a). The Board reasoned that:

> ... section 212(c) has long since been expanded to encompass many aliens not originally contemplated by the statute. We have concluded that the same fundamental fairness/equal protection arguments made in *Francis* ... can and should be invoked to make section 212(c) relief available to aliens deportable under any ground of deportability except those where there is a comparable ground of exclusion which has been specifically excepted from section 212(c) [i.e., those grounds which the Attorney General may not waive] .... Having made the section 212(c) waiver, a form of relief ostensibly available only in exclusion proceedings, available in deportation proceedings, *we find no reason not to make it applicable to all grounds of deportability with the exception of those comparable to the exclusion grounds expressly excluded in section 212(c)*, rather than limiting it, as now, to grounds of deportability having equivalent exclusion provisions. *The two approaches are equally logical and bear equally little resemblance to the statute as written.*

Board Opinion at 5 (emphases added). The Board did not base its

expansion of section 212(c) upon what it understood to be a constitutional requirement. *Cf. supra* pp. 5-6 (discussing constitutional holdings of *Francis* and *Silva*).

Applying its new approach to the present case, the Board concluded that the respondent should have been granted the opportunity to seek discretionary relief under section 212(c), because the ground for deportation asserted against the respondent is not a ground for exclusion placed beyond the Attorney General's discretionary powers by section 212(c). Accordingly, the Board held that the respondent could seek discretionary relief under section 212(c) on remand to the immigration judge. Board Opinion at 5-6, 8.

6. The INS appealed the decision of the Board to me on April 6, 1990.[7]

## II.

The INS urges me to reverse the expansion of section 212(c) to deportation cases by giving effect to the plain language of that provision, which refers only to exclusion. INS Referral at 7. Specifically, the INS requests that I disapprove, among other decisions, the Board's holding in *Silva*, which adopted the Second Circuit's decision in *Francis*. *Id.*; *see also supra* note 6 (denying INS request for reconsideration of *Matter of L—*, *Matter of S—*, and *Matter of G—A—*).

For two reasons, I decline at this time to undertake a reexamination of these precedents and, accordingly, leave for another day the question of whether *Silva* should be disapproved. First, as the respondent and *amici* emphasize, and as the record confirms, the INS did not challenge the validity of *Silva* before the Board. *See* Respondent's Brief Upon Referral to the Attorney General for Review ("Respondent's Brief") at 20; Brief of *Amici Curiae*, American Immigration Lawyer's Association and National Immigration Project of the National Lawyers Guild, Inc. ("*Amici* Brief") at 26-27. As a result, the Board did not discuss this issue in its opinion. In the absence of compelling circumstances, I do not consider it prudent to resolve the validity of *Silva* without allowing the Board to explore that question in the first instance. Second, I need not reexamine *Silva* in order to decide the present case for, as I shall explain, even if I assume the validity of *Silva*, I nonetheless must disapprove the Board's decision here.

I conclude that the Board erred in holding that relief under section 212(c) may be afforded for grounds for deportation that are not

---

[7]By regulation, the Attorney General has retained authority to review final decisions of the Board, either upon his initiative or by request. 8 C.F.R. § 3.1(h).

grounds for exclusion made waivable by the terms of section 212(c). I reach this conclusion for two related reasons. First, the Board erred in concluding that its holding in *Silva* and its further expansion of section 212(c) in this case "bear equally little resemblance to the statute as written." Board Opinion at 5. *Silva* at least remains tied, albeit loosely, to the statutory text, because it permits waivers of only those grounds for deportation that Congress expressly made waivable in the related context of exclusion. Under *Silva*, therefore, the Attorney General may not waive a ground for deportation if it is not a ground for exclusion at all or if it is a ground for exclusion placed beyond the Attorney General's discretionary powers by the terms of section 212(c). In contrast, under the Board's holding in this case, only the latter limitation would remain. The Board's approach thus would take immigration practice even further from the statutory text, which refers only to grounds for exclusion.

The disruption to the statutory scheme that would be wrought by the Board's expansion of section 212(c) is apparent when one examines the provisions designed by Congress specifically to govern deportation cases. In section 244(a)(1) of the INA, Congress has expressly provided that the Attorney General may, in his discretion, suspend the deportation of an illegal entrant who "has been physically present in the United States for a continuous period of at least seven years," who "proves that during all of such period he was and is a person of good moral character," and who "is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship .... " 8 U.S.C. § 1254(a)(1). The showings of "good moral character" and "extreme hardship" required under section 244(a)(1) are, by contrast, not required under section 212(c). Extension of section 212(c) to deportation cases thus would further supplant the standard of proof specified by Congress for discretionary relief in such cases.

Second, the rationale articulated in *Francis* and *Silva* for expansion of discretionary relief under section 212(c) to deportation proceedings apart from those considered the equivalents of exclusion proceedings rests upon the conclusion that the constitutional guarantee of equal protection requires that expansion. Without evaluating the correctness of that conclusion, I am persuaded that the guarantee of equal protection does not require the further departure from the terms of section 212(c) made by the Board in this case.

Under *Francis* and *Silva*, the guarantee of equal protection requires, at most, that an alien subject to deportation must have the same opportunity to seek discretionary relief as an alien who has temporarily left this country and, upon reentry, been subject to exclusion. *See supra* p. 6 (framing of the issue in *Francis*). The guarantee of equal

287

protection, as understood by *Francis* and *Silva*, thus is satisfied if discretionary relief is available in deportation cases for all grounds that would be subject to waiver under section 212(c) were they asserted against the alien in exclusion proceedings. Under no plausible understanding of equal protection principles must discretionary relief be made available in deportation cases where the ground for deportation could not be waived if asserted in an exclusion case—or, as here, could not be asserted at all in an exclusion case. Accordingly, the Second Circuit in *Francis* and the Board in *Silva*, by concluding that equal protection principles require deviation from the literal terms of section 212(c), kept such deviations to what they understood as the constitutionally mandated minimum; that is, *Francis* and *Silva* require only that discretionary relief under section 212(c) be made available in deportation proceedings in which the asserted ground for deportation is also a ground for exclusion expressly subject to waiver under that section.

The constitutional guarantee of equal protection requires nothing more, as the Board itself concluded in *Granados*. Since that administrative decision, the constitutional soundness of *Granados* has been confirmed by the Ninth Circuit—the only court of appeals to address the question. *See Cabasug v. INS*, 847 F.2d 1321 (9th Cir. 1988). In *Cabasug*, the INS ordered a permanent resident alien deported based upon his conviction for a firearm offense. *Id.* at 1322 (citing 8 U.S.C. § 1251(a)(14)). On authority of *Granados*, the Board held that discretionary relief under section 212(c) was unavailable, because the particular ground for deportation has no counterpart among the grounds for exclusion. In the face of an equal protection challenge, the court upheld the Board's decision:

> [T]here exists no class of persons alike in carrying [the prohibited types of firearms], and deportable or not depending on the irrelevant circumstance of whether at some previous time they took a temporary trip out of the country. The gravamen of the equal protection violation identified in *Francis* was just such a distinction without a material difference. In the treatment of these weapons offenses, Congress has legislated no such distinction, nor has any administrative practice created one.

*Id.* at 1326. The same is true of illegal entrants, such as the respondent. Here, deportation turns not upon the "irrelevant circumstance" of whether the respondent has temporarily left the United States but, instead, upon the illegal nature of his reentry.[8]

---

[8]The alien in *Cabasug* also argued that the determination to deny discretion under section 212(c) for a firearm offense but to permit such relief for other "more serious[]" grounds—for instance, "crimes of moral turpitude such as murder or rape"—was unconstitutional. 847 F.2d at 1326. The court rejected this further claim, stating:

> We ... do not agree with the implicit proposition that the Constitution requires Congress to lay out crimes on a spectrum, and grant at least as much discretion for the

Although the Ninth Circuit's decision in *Cabasug* — holding that the Constitution does not require discretionary relief under section 212(c) to be accorded from a ground for deportation that is not also a ground for exclusion made waivable under that section—is not controlling of its own force in the present case, I find the Ninth Circuit's reading of section 212(c) more persuasive than that of the Board.[9] In the face of the convincing constitutional analysis in *Cabasug*, the Board merely asserts that there is "*no reason not to* make [section 212(c)] applicable to all grounds of deportability." Board Opinion at 5 (emphasis added).[10] This bald assertion simply is not enough to justify the Board's decision to wrench away even further from the statutory text. Absent some supervening affirmative justification based upon a requirement of the Constitution or other applicable law, neither the Board nor I may depart—or, in this instance, extend an earlier departure—from the terms of the statute we are bound to enforce.

Accordingly, I conclude that the Board erred in its unjustified expansion of discretionary relief under section 212(c).

## III.

The respondent and *amici* advance various additional arguments for approval of the Board's decision, but none of these is persuasive.[11]

---

less serious as for any more serious crimes.... Congress may fashion a sanction without discretionary mitigating features in order to deter a kind of conduct about which it is especially concerned. Congress may reasonably determine that a nondiscretionary moderate penalty will deter violators more effectively and more justly than a lesser risk of a harsher penalty.

*Id.* at 1327.

[9] The respondent errs in his contention that the Attorney General owes deference to the legal conclusions of the Board. *See* Respondent's Brief at 17-20. By statute, Congress has vested in the Attorney General, not the Board, the authority to rule upon legal questions arising under the immigration laws. *See* 8 U.S.C. § 1103(a). For purposes of administrative efficiency, the Attorney General has delegated this function to the Board in the first instance, subject to his ultimate review. *See* 8 C.F.R. § 3.1. In this capacity, the Board acts on the Attorney General's behalf rather than as an independent body. The relationship between the Board and the Attorney General thus is analogous to an employee and his superior rather than to the relationship between an administrative agency and a reviewing court. The principles that counsel deference by a court to the statutory interpretations of a coequal branch vested by Congress with authority to administer the law are inapplicable here. *Cf. Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

[10] On this basis, the Board simply declared in *ipse dixit* that it found "unpersuasive" the conclusion of the Ninth Circuit in *Cabasug*. Board Opinion at 6.

[11] Apart from the merits of the Board's decision, the respondent errs in his contention that the Attorney General cannot serve as an impartial decisionmaker in this appeal. *See* Respondent's Brief at 25-27. The respondent correctly notes that one of the Attorney General's subordinates—the Solicitor General—has represented the INS in a separate

These arguments were not raised by the respondent before the Board, nor do any of them overcome the errors in the Board's analysis that I have described above.

1. The respondent contends that this case is controlled by the Fifth Circuit's decision in *Rivera v. INS*, 791 F.2d 1202 (5th Cir. 1986). *See* Respondent's Brief at 14-16. This contention is incorrect. Unlike the present case, *Rivera* concerned the standards for calculation of the seven-year period of permanent resident status necessary for an alien to avail himself of section 212(c). 791 F.2d at 1204.[12] The court rejected the contention of the INS that an alien loses permanent resident status—and, hence, his eligibility for relief under section 212(c)—upon the entry of a final administrative order of deportation. *Id.* at 1204-05. The court relied heavily upon the reasoning of the Board in *Matter of S—*, 6 I. & N. Dec. 392 (BIA 1954; A.G. 1955), which had long ago rejected the argument advanced there by the INS on the ground that it would render discretionary relief under section 212(c) completely unavailable in deportation proceedings, even those that should have been exclusion proceedings or that involve an adjustment of status under section 245(a). 791 F.2d at 1205. That the Fifth Circuit also has rejected this sweeping contention does not bear upon the wisdom of the Board's departure from *Granados* in this case.[13]

---

litigation involving section 212(c) and, in that capacity, urged the Supreme Court to decline consideration of that statutory provision pending the present appeal. *See* Brief for the Respondent in Opposition to the Petition for a Writ of Certiorari, *Ballbe v. INS* (No. 89-1111) at 18-19, *cert. denied*, 495 U.S. 929 (1990). The respondent does not detail how the Solicitor General's actions might bias review by the Attorney General. If the mere involvement of a Department of Justice official were sufficient to bias the Attorney General, then the entire process by which he reviews INS deportation determinations must be open to question, given that the INS — like the Solicitor General—is within the Department of Justice. That, however, is plainly not the law.

[12] Although *Rivera* did involve a deportation proceeding, the application of section 212(c) in that case occurred in the context of a waiver of a ground for deportation that was also a ground for exclusion. 791 F.2d at 1203 (deportation for aiding illegal entry). The facts of *Rivera* thus are analogous to those in *Granados*, the administrative precedent from which the Board departed here.

[13] As the respondent observes, the court in *Rivera* did allude to "the well-established policy of the INS ... to allow deportable permanent resident aliens ... to seek a waiver under section 212(c)," and, as evidence of this policy, pointed to both the Board's decision in *Silva* and the underlying Second Circuit decision in *Francis*. *Rivera*, 791 F.2d at 1204 & n.3. The Fifth Circuit emphasized in *Rivera*, however, that it "ha[s] never ruled on the validity of the *Francis* holding." *Id.* at 1204 n.3 (citing *Byus-Narvaez v. INS*, 601 F.2d 879, 881 n.5 (5th Cir. 1979), and *Sierra-Reyes v. INS*, 585 F.2d 762, 763 (5th Cir. 1978)). The court did not make such a ruling as part of its decision in *Rivera*. Even had the Fifth Circuit adopted *Francis* as the law of that jurisdiction, such a holding would not control the present appeal. As I have explained, the Board's decision here

290

2. Both the respondent and *amici* contend that reexamination of *Francis* and *Silva* is foreclosed because Congress has not acted to disapprove those decisions through amendment of section 212(c). *See* Respondent's Brief at 9-14; *Amici* Brief at 21-26. Specifically, I am urged to infer that Congress, by amending other provisions of the INA but by failing to revise section 212(c) to disapprove the gloss placed upon that provision, has implicitly acquiesced in the interpretation of section 212(c) by the Board. As noted above, however, I do not here reach the question of the validity of *Francis* and *Silva*. Moreover, neither the respondent nor *amici* marshal evidence suggesting that Congress has acquiesced in the Board's *new* extension of section 212(c) to grounds for deportation that are not analogous to the grounds for exclusion listed in that section.[14] As the Ninth Circuit concluded in

would extend discretionary relief under section 212(c) far beyond situations controlled by *Francis* or *Silva*.

[14] This remains true under the 1990 Act. *See supra* note 1. Section 545 of the 1990 Act enacts a new INA section 242B(e)(5)(A) under which an alien who fails to appear for his deportation proceeding shall be ineligible for 5 years for discretionary relief, including "relief under section 212(c)." This new section 242B appears to rest upon the assumption that section 212(c) relief would otherwise be available in at least some deportation proceedings, but neither the text of section 242B nor its legislative history indicates the precise types of deportation proceedings in which Congress understood such relief to be available. Accordingly, the 1990 Act cannot be taken as a congressional endorsement of the Board's opinion in this case or, indeed, in *Silva*. Even were the Board to retreat from *Silva*, relief under section 212(c) would remain available in deportation proceedings that are considered the equivalents of exclusion proceedings and, hence, the need would remain to list section 212(c) among the forms of discretionary relief unavailable under the new INA section 242B.

Section 511(a) of the 1990 Act adds a second sentence to INA section 212(c) stating that the discretionary relief provided thereunder "shall not apply to an alien who has been convicted of an aggravated felony and who has served a term of imprisonment of at least 5 years." In describing a forerunner of this provision, the Senate section-by-section analysis noted that "[s]ection 212(c) provides relief from exclusion and by court decision from deportation .... This discretionary relief is obtained by numerous excludable and deportable aliens, including aliens convicted of aggravated felonies ...." 136 Cong. Rec. S6604 (daily ed. May 18, 1990). This statement from the legislative history is consistent with my disapproval of the Board's decision here, as my opinion leaves in place the line of administrative and judicial decisions through *Granados* that applies section 212(c) in deportation cases. Even were that not true, I would be reluctant to interpret a passing, unspecific reference in the legislative history as incorporating into section 212(c) the entire range of administrative and judicial decisions concerning the applicability of that section in deportation proceedings. *See Blanchard v. Bergeron*, 489 U.S. 87 (1989) (Scalia, J., concurring) (citations even of *particular* judicial decisions in legislative history are "unreliable evidence of what the voting Members of Congress actually had in mind"). This reluctance is especially appropriate where the statutory language enacted by Congress in section 212(c) does not contemplate the use of that provision in deportation. The 1990 Act merely adds to section 212(c) a sentence

291

*Cabasug*, such an application of section 212(c) is not dictated by the Constitution as interpreted in *Francis* and *Silva* and, indeed, takes immigration practice further from the statutory text of the INA.

Moreover, although some Supreme Court opinions suggest a receptiveness to arguments of congressional acquiescence, *see, e.g., North Haven Board of Education v. Bell*, 456 U.S. 512, 535 (1982); *but see Train v. City of New York*, 420 U.S. 35, 45 (1975) ("legislative intention, without more, is not legislation"), the Court, more recently, has squarely rejected such reasoning on the ground that:

> [i]t is "impossible to assert with any degree of assurance that congressional failure to act represents" affirmative congressional approval of [a court]'s statutory interpretation.... Congress may legislate ... only through the passage of a bill which is approved by both Houses and signed by the President.... Congressional inaction cannot amend a duly enacted statute.

*Patterson v. McLean Credit Union*, 491 U.S. 164, 174-175 n.1 (1989) (quoting *Johnson v. Transportation Agency*, 480 U.S. 616, 671-72 (1987) (Scalia, J., dissenting)). Accordingly, I reject this second proposed ground for approval of the Board's decision.

3. The respondent contends that the INS must accord him the opportunity to seek discretionary relief under section 212(c) due to an INS regulation that provides:

> [a]n application for the exercise of discretion under [section] 212(c) of the Act may be submitted to an immigration judge in the course of proceedings under section[] ... 242 of the Act [i.e., deportation proceedings] ... and shall be adjudicated by the immigration judge in such proceedings ....

8 C.F.R. § 212.3(d). *See also* Respondent's Brief at 16-17. It is, of course, a fundamental principle of administrative law that an agency must follow its regulations in adjudication until those regulations have been duly revised through rulemaking procedures. *See generally Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 284 U.S. 370, 389 (1932). This principle of administrative consistency, however, does not support the result urged by the respondent in this case. Here, the INS has not bound itself by regulation to afford aliens the opportunity to seek discretionary relief under section 212(c) in situations such as that in *Silva*, much less to cases even further from the intended reach of the statute such as the present appeal. The portion of the INS regulation relied upon by the respondent was promulgated in 1958, *see* 23 Fed. Reg. 141 (1958), when relief under section 212(c) could be sought only in deportation proceedings that should have been exclusion proceedings or that involved an adjustment of status under section 245(a). The regulation thus was not issued

---

concerning who may obtain relief under that section, not when such relief may be afforded.

to implement the Board's 1976 decision in *Silva*, extending section 212(c) to all deportation proceedings in which the asserted ground for deportation is also a ground for exclusion subject to waiver. That extension of section 212(c) was accomplished not through rulemaking but through adjudication—*viz.*, Board decisions in particular deportation proceedings—and, hence, may be undone through a subsequent adjudication such as the present appeal. *See generally NLRB v. Wyman-Gordan Co.*, 394 U.S. 759, 765-66 (1969) (plurality opinion).[15]

As there is no constitutional justification for a further departure from the statutory text and as neither the respondent nor *amici* has identified an alternative basis for the Board's decision, I must disapprove the decision of the Board.

## CONCLUSION

Accordingly, the decision of the Board is disapproved and the case remanded for further proceedings consistent with this opinion.[16]

---

[15] In a 1987 notice of proposed rulemaking announcing changes to other subsections of 8 C.F.R. § 212.3 not implicated here, the INS did note that the Board's decision in *Silva* had turned section 212(c)—and, by implication, the regulations implementing that section — into a source of "full and independent deportation relief." 52 Fed. Reg. 11620 (1987). This comment merely clarifies that the reading of section 212(c) articulated in *Silva* (and extended in later Board decisions such as the one presently under appeal) arises from adjudication rather than rulemaking.

Were the Board ever to retreat from *Silva*, the INS still would need to maintain a regulation to govern the application of section 212(c) in deportation proceedings, albeit only those deportations that should have been exclusion proceedings or that of section 212(c) along such lines through Board decisions in adjudication would not appear to require modification of the existing language in 8 C.F.R. § 212.3.

[16] If the ground for deportation asserted in this case had been other than illegal entry, remand might have been necessary to permit the respondent to seek an adjustment of status under section 245(a). *See supra* note 6. The present remand, however, does not concern section 245(a), because relief under that section is available only to an alien "who was inspected and admitted or paroled into the United States." 8 U.S.C. § 1255(a). Congress specifically intended this limitation to foreclose relief under section 245(a) to aliens, like the respondent, "who entered the United States surreptitiously." S. Rep. No. 1651, 86th Cong., 2d Sess. 17 (1960). *See also id.* at 16 (section 245(a) "will not benefit the alien who has entered the United States in violation of the law"); H.R. Rep. No. 2258, 85th Cong., 2d Sess. 3 (1958) (same).