# Matter of Ezzat H. ABDELGHANY, Respondent

*Decided February 28, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) A lawful permanent resident who has accrued 7 consecutive years of lawful unrelinquished domicile in the United States and who is removable or deportable by virtue of a plea or conviction entered before April 24, 1996, is eligible to apply for discretionary relief under former section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), unless: (1) the applicant is subject to the grounds of inadmissibility under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act, 8 U.S.C. §§ 1182(a)(3)(A), (B), (C), or (E), or (10)(C) (2012); or (2) the applicant has served an aggregate term of imprisonment of at least 5 years as a result of one or more aggravated felony convictions entered between November 29, 1990, and April 24, 1996.

(2) A lawful permanent resident who has accrued 7 consecutive years of lawful unrelinquished domicile in the United States and who is removable or deportable by virtue of a plea or conviction entered between April 24, 1996, and April 1, 1997, is eligible to apply for discretionary relief from removal or deportation under former section 212(c) of the Act unless: (1) the applicant's removal or deportation proceedings commenced on or after April 24, 1996, and the conviction renders the applicant removable or deportable under one or more of the deportability grounds enumerated in section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 (as amended); or (2) the applicant is subject to the grounds of inadmissibility under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act; or (3) the applicant has served an aggregate term of imprisonment of at least 5 years as a result of one or more aggravated felony convictions entered between November 29, 1990, and April 24, 1996.

(3) A lawful permanent resident who is otherwise eligible for relief under former section 212(c) of the Act may apply for such relief in removal or deportation proceedings without regard to whether the relevant conviction resulted from a plea agreement or a trial and without regard to whether he or she was removable or deportable under the law in effect when the conviction was entered.

FOR RESPONDENT: Mumtaz A. Wani, Esquire, Falls Church, Virginia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Justin M. Leone, Assistant Chief Counsel

AMICI CURIAE: American Immigration Lawyers Association;[1] Federation for American Immigration Reform[2]

---

[1] Steven W. Manning, Esquire
[2] Michael M. Hethmon, Esquire

BEFORE:  Board Panel:  HOLMES, GUENDELSBERGER, and WENDTLAND, Board Members.

WENDTLAND, Board Member:

In a decision dated June 23, 2011, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), as an alien convicted of an aggravated felony under sections 101(a)(43)(E)(i) and (U) of the Act, 8 U.S.C. §§ 1101(a)(43)(E)(i) and (U) (2006), based on his 1995 Federal conviction for conspiracy to commit arson in violation of 18 U.S.C. §§ 371 and 844(i) (1994).  The respondent requested relief from removal under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), but the Immigration Judge concluded that he was ineligible for a waiver because the aggravated felony category under which he was charged did not have a "statutory counterpart" in the grounds of inadmissibility, as required by 8 C.F.R. § 1212.3(f)(5) (2011) and our precedent decisions.  The respondent has appealed, arguing that the statutory counterpart rule was misapplied in his case.

During the pendency of the appeal, the Supreme Court decided *Judulang v. Holder*, 132 S. Ct. 476 (2011).  That decision invalidated our precedents applying the statutory counterpart rule as "arbitrary and capricious," leaving it to us to "devise another, equally economical policy respecting eligibility for § 212(c) relief."  *Id*. at 490.  In light of *Judulang*, we solicited supplemental briefs in which we asked the parties and amici curiae to provide us with their views as to what test we should adopt for evaluating the respondent's eligibility for section 212(c) relief.[3]

We now conclude that, with a few significant exceptions, a lawful permanent resident of the United States who has accrued 7 consecutive years of lawful unrelinquished domicile in this country is eligible to apply for section 212(c) relief in removal proceedings if he or she is removable by virtue of a plea or conviction entered before April 1, 1997.  Applying this test, we conclude that the respondent is eligible to apply for a section 212(c) waiver.  Accordingly, the respondent's appeal will be sustained and the record will be remanded for further proceedings.

---

[3]  We wish to express our gratitude to the parties and amici for their thoughtful briefs.

## I.  FACTUAL AND PROCEDURAL HISTORY

The relevant facts are undisputed.  The respondent is a native and citizen of Egypt who was admitted to the United States as a nonimmigrant in 1986 and became a lawful permanent resident in 1987.  In 1995, pursuant to a guilty plea, the respondent was convicted of conspiracy to commit arson in violation of 18 U.S.C. §§ 371 and 844(i), for which he was sentenced to a 24-month term of imprisonment.[4]

In July 2010 the Department of Homeland Security ("DHS") initiated these removal proceedings, alleging that the respondent's 1995 conviction renders him removable from the United States as an alien convicted of an "aggravated felony," as that term is defined by sections 101(a)(43)(E)(i) and (U) of the Act.[5]  The Immigration Judge sustained that charge, which is not disputed, and denied the respondent's request for a section 212(c) waiver, the only form of relief for which he applied.  As noted previously, the Immigration Judge found the respondent ineligible for such relief based solely on the interpretation in Board precedents of the "statutory counterpart" rule, which was later invalidated by the *Judulang* Court.

## II.  LEGAL BACKGROUND

Since the evolution of section 212(c) relief has been described elsewhere, most notably in the Supreme Court's decision in *Judulang*, we need not repeat its full history here.  Instead, we provide the following abridged account.

### A.  Amendment and Repeal of Section 212(c): *INS v. St. Cyr*

Between 1952 and 1990, section 212(c) of the Act provided in relevant part that

> [a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [their excludability under section 212(a) of the Act].

---

[4]  The respondent's 24-month sentence was subsequently reduced to a term of 6 months pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

[5]  Section 101(a)(43)(E)(i) of the Act defines the term "aggravated felony" to include "an offense described in . . . [18 U.S.C. § 844(i)]," and section 101(a)(43)(U) encompasses certain conspiracy convictions.

Beginning in 1990, Congress placed a series of increasingly strict limits on the availability of section 212(c) relief for lawful permanent residents with criminal convictions. The first such limitation made section 212(c) relief unavailable to anyone who had served an aggregate term of imprisonment of at least 5 years as a result of one or more aggravated felony convictions. *See* Immigration Act of 1990, Pub. L. No. 101-649, § 511(a), 104 Stat. 4978, 5052 (effective Nov. 29, 1990) ("IMMACT 90"), *as amended by* Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, § 306(a)(10), 105 Stat. 1733, 1751 (effective as if included in IMMACT 90).

In 1996, that prohibition was expanded to cover all lawful permanent residents who were "deportable" based on convictions for a broad set of offenses, including aggravated felonies, drug convictions, firearm offenses, and certain convictions for crimes involving moral turpitude. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 440(d), 110 Stat. 1214, 1277 (effective Apr. 24, 1996) ("AEDPA"). Finally, less than 1 year after AEDPA went into effect, Congress repealed section 212(c) in its entirety. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, 3009-597 (effective Apr. 1, 1997) ("IIRIRA").[6]

The foregoing amendments—which first limited and then repealed section 212(c)—prompted a great deal of administrative litigation, primarily concerned with defining the amendments' proper temporal scope. That litigation culminated in *Matter of Soriano*, 21 I&N Dec. 516, 533−40 (BIA 1996; A.G. 1997), in which the Attorney General determined that applying section 440(d) of the AEDPA to foreclose applications for section 212(c) relief that were pending on AEDPA's effective date had no impermissible retroactive effect. In 2001, however, the Supreme Court held that in view of the presumption against statutory retroactivity, "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." *INS v. St. Cyr*, 533 U.S. 289, 326 (2001).

---

[6] The elimination of section 212(c) relief was accompanied by the creation of a new form of discretionary relief—cancellation of removal for lawful permanent residents—which is not available to lawful permanent residents with aggravated felony convictions. IIRIRA § 304(a)(3), 110 Stat. at 3009-594. Cancellation of removal for lawful permanent residents is codified at section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2012).

### B. "Statutory Counterpart" Rule and *Judulang*

Various issues relating to the availability of section 212(c) relief nevertheless remained. The text of section 212(c) has always been framed in terms of the "admission" of lawful permanent residents who are returning to the United States after traveling abroad. In the 1970s, however, judicial and administrative determinations relying on constitutional considerations resulted in the extension of section 212(c) relief to many lawful permanent residents who had never left the United States—and thus were not seeking "admission," either currently or nunc pro tunc—and who were "deportable" based on conduct similar to that described in the grounds of exclusion at section 212(a) of the Act. *See, e.g.*, *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976); *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976).[7]

The expansion of section 212(c) beyond its text has presented difficult line-drawing problems for the Board over the years. *See Judulang v. Holder*, 132 S. Ct. at 488−89. In the wake of *St. Cyr*, however, the Attorney General declared by means of a regulation that section 212(c) relief was unavailable to any lawful permanent resident who was deportable or removable "on a ground which does not have a statutory counterpart in section 212 of the Act." 8 C.F.R. § 1212.3(f)(5); *see also* Executive Office for Immigration Review; Section 212(c) Relief for Aliens With Certain Criminal Convictions Before April 1, 1997, 69 Fed. Reg. 57,826, 57,831−32 (Sept. 28, 2004) (Supplementary Information). Applying that regulation, we issued two precedents holding that lawful permanent residents who were deportable under the "sexual abuse of a minor" and "crime of violence" aggravated felony categories—sections 101(a)(43)(A) and (F) of the Act, respectively—were ineligible for section 212(c) relief because those categories lacked substantially equivalent statutory counterparts in the inadmissibility grounds. *Matter of Brieva*, 23 I&N Dec. 766 (BIA 2005) (crime of violence); *Matter of Blake*, 23 I&N Dec. 722 (BIA 2005) (sexual abuse of a minor).

As discussed, the *Judulang* Court invalidated as "arbitrary and capricious" the understanding of the statutory counterpart rule embodied in *Brieva* and *Blake*, but it did not preclude us from fashioning an alternative rule, "so long as it comports with everything held in both this decision and *St. Cyr.*" *Judulang v. Holder*, 132 S. Ct. at 490. Our initial task, then, is to determine what *Judulang* and *St. Cyr* require.

---

[7]   With the passage of IIRIRA, the former grounds of "exclusion" came to be identified as grounds of "inadmissibility."

### C. Lessons of *St. Cyr* and *Judulang*

A guiding principle underlying *St. Cyr* is that Congress did not express a clear intention that the AEDPA and IIRIRA amendments relating to section 212(c) would operate in a manner that would have a "retroactive effect." Thus, denying section 212(c) relief to a lawful permanent resident on the basis of those amendments is impermissible if such denial "attaches a new disability, in respect to transactions or considerations already past." *INS v. St. Cyr*, 533 U.S. at 321 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 269 (1994)) (internal quotation mark omitted). In the wake of *St. Cyr*, the Supreme Court has also clarified that an alien challenging the allegedly retroactive application of an amendment to the Act is not required to prove that he actually relied on prior law when structuring his conduct. *Vartelas v. Holder*, 132 S. Ct. 1479, 1490−91 (2012).

The fundamental lesson of *Judulang* is that a deportable lawful permanent resident cannot be declared ineligible for section 212(c) relief on the basis of mechanical distinctions arising from the structure of the immigration statute. Instead, any distinction drawn between two different classes of removable lawful permanent residents "must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system." *Judulang v. Holder*, 132 S. Ct. at 485. Ultimately, this means that any approach to section 212(c) eligibility that places one removable lawful permanent resident in a less advantageous position than another must embody a rational judgment regarding the individuals' relative "fitness to remain in the country." *Id.*

## III. ANALYSIS

After *St. Cyr* and *Judulang*, the basic question remains: which deportable lawful permanent residents may apply for section 212(c) relief?

In all its various iterations, the statutory language of section 212(c) has limited the availability of relief to individuals who are "aliens lawfully admitted for permanent residence" who have accrued at least 7 consecutive years of "lawful unrelinquished domicile" in the United States. Section 212(c) of the Act. Those requirements remain in effect. *See* 8 C.F.R. § 1212.3(f)(1)−(2).[8] Further, section 212(c) relief is unavailable to those

---

[8] The requirement that an applicant for section 212(c) relief be an alien "lawfully admitted for permanent residence" means that such relief is unavailable to individuals who obtained lawful permanent resident status by fraud or who otherwise lacked entitlement to it. *See, e.g.*, *Matter of T-*, 6 I&N Dec. 136, 137−38 (BIA, A.G. 1954); *see also Monet v. INS*, 791 F.2d 752, 753−54 (9th Cir. 1986);

(continued . . .)

who have engaged in terrorism, espionage, sabotage, or other acts that are incompatible with the vital national security interests of the United States. In practice, this limitation excludes individuals whose conduct makes them inadmissible under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act.[9] *See* 8 C.F.R. § 1212.3(f)(3).

Following the IMMACT 90 amendments, section 212(c) relief also remains unavailable to the class of individuals who were convicted of one or more aggravated felonies between November 29, 1990, and April 24, 1996, and who have served for such felony or felonies an aggregate term of imprisonment of at least 5 years. *See, e.g.*, *Lawrence v. Holder*, 717 F.3d 1036, 1039−41 (9th Cir. 2013); *Lupera-Espinoza v. Att'y Gen. of U.S.*, 716 F.3d 781, 786−88 (3d Cir. 2013); *Perriello v. Napolitano*, 579 F.3d 135, 142−43 (2d Cir. 2009); *Fernandes Pereira v. Gonzales*, 417 F.3d 38, 44−46 (1st Cir. 2005).[10] Further, section 440(d) of the AEDPA requires that section 212(c) relief be denied to anyone whose plea or conviction was entered between April 24, 1996, and April 1, 1997, and "who is deportable by reason of having committed any criminal offense covered in section 237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 237(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 237(a)(2)(A)(i)." *See, e.g.*, *Moreno-Bravo v. Gonzales*, 463 F.3d 253, 264 (2d Cir. 2006). *See generally Matter of Fortiz*, 21 I&N Dec. 1199 (BIA 1998).[11] Finally,

---

*Matter of Longstaff*, 716 F.2d 1439, 1441−42 (5th Cir. 1983); *cf. Matter of Koloamatangi*, 23 I&N Dec. 548, 549−51 (BIA 2003) (addressing cancellation of removal).

[9] Section 212(a)(3)(A) pertains to any individual who a consular officer or the Attorney General knows or has reasonable ground to believe is seeking to enter the United States to engage in espionage, sabotage, political subversion, and the like. Section 212(a)(3)(B) covers terrorists and those affiliated with terrorist organizations. Section 212(a)(3)(C) covers individuals whose presence in the United States would, in the reasonable judgment of the Secretary of State, have adverse foreign policy consequences. Section 212(a)(3)(E) relates to participants in genocide, torture, extrajudicial killings, or Nazi persecution. Section 212(a)(10)(C), which was at section 212(a)(9)(C) of the Act prior to the repeal of section 212(c), covers individuals who have engaged in acts of international child abduction.

[10] This prohibition is inapplicable by regulation to any aggravated felony conviction resulting from a plea agreement made before November 29, 1990. *See* 8 C.F.R. § 1212.3(f)(4)(ii); *see also Toia v. Fasano*, 334 F.3d 917, 919−21 (9th Cir. 2003).

[11] However, the AEDPA and IIRIRA amendments to section 212(c) are inapplicable—irrespective of *St. Cyr*—to any alien who is in *deportation* proceedings that commenced prior to April 24, 1996. *See* IIRIRA § 309(c)(1), 110 Stat. at 3009-625; *see also* 8 C.F.R. § 1212.3(g). Further, IIRIRA's repeal of section 212(c) is inapplicable to any alien in *deportation* proceedings, even if those proceedings commenced after April 24, 1996, and even where a conviction providing a basis (or an additional basis) for deportability was

(continued . . .)

section 212(c) relief is unavailable to any individual in post-IIRIRA removal proceedings who is removable by virtue of pleas or convictions entered on or after April 1, 1997. *See, e.g.*, *Perez v. Elwood*, 294 F.3d 552, 562 (3d Cir. 2002).

In seeking to establish eligibility criteria for lawful permanent residents who are not subject to the foregoing limitations, we are guided by the lessons of *Judulang* and *St. Cyr*. That is, we must avoid standards that arbitrarily exclude people from eligibility for relief without regard to their relative "fitness to remain in the United States" while also taking care to avoid applying the AEDPA or IIRIRA amendments in a manner that would have an impermissible retroactive effect. *Judulang v. Holder*, 132 S. Ct. at 485. Our present task is to determine how these lessons should be implemented in actual cases.

### A. "Fitness To Remain in the United States"

In response to our supplemental briefing request, the parties and amici have proposed several competing standards for identifying those deportable lawful permanent residents whom we should deem "fit[] to remain in the United States" as applicants for section 212(c) relief. *Id.* We address the merits of each proposed standard in turn.

### 1. *Blake v. Carbone* Approach

In his supplemental brief, the respondent urges us to adopt the approach embodied in *Blake v. Carbone*, 489 F.3d 88, 101−03 (2d Cir. 2007), in which the United States Court of Appeals for the Second Circuit held that section 212(c) relief is available to an otherwise eligible applicant if his conviction would render a similarly situated person inadmissible under section 212(a) of the Act, irrespective of whether the pertinent inadmissibility ground is precisely a "counterpart" of or "comparable" to the deportability ground under which the applicant is charged. Because of the categories specified under the criminal grounds of removability, this approach often requires a deportable lawful permanent resident to show that his offense is covered by section 212(a)(2)(A)(i)(I) of the Act, the inadmissibility ground that pertains to a crime (or crimes) involving moral turpitude.

---

entered on or after April 1, 1997. *See, e.g.*, *Pascua v. Holder*, 641 F.3d 316 (9th Cir. 2011). Further still, the AEDPA amendments do not apply to aliens in pre-IIRIRA *exclusion* proceedings. *See Matter of Fuentes-Campos*, 21 I&N Dec. 905 (BIA 1997).

The application of *Blake v. Carbone* would perhaps be straightforward in most cases.  Indeed, applying that approach to the present facts would probably lead to the uncomplicated conclusion that the respondent is eligible for section 212(c) relief, since his offense of conviction—conspiracy to commit arson—is likely a crime involving moral turpitude under section 212(a)(2)(A)(i)(I) of the Act.  *See Da Silva Neto v. Holder*, 680 F.3d 25 (1st Cir. 2012) (holding that malicious destruction of property under Massachusetts law is a crime involving moral turpitude); *Vuksanovic v. U.S. Att'y Gen.*, 439 F.3d 1308 (11th Cir. 2006) (holding that second-degree arson under Florida law is a crime involving moral turpitude).  As the DHS and amici point out in their briefs, however, this approach has some drawbacks.

The *Blake v. Carbone* approach has some of the same mechanical features as the statutory counterpart rule, placing deportable lawful permanent residents in the position of having to squeeze their deportable offenses into often ill-fitting grounds of inadmissibility.  As a result, application of this approach can lead to the denial of relief for reasons that turn on the structure of the immigration law but that do not relate to the applicant's objective "fitness" to remain in the United States.  A few brief examples serve to illustrate the point.

Some convictions for a crime involving moral turpitude that render aliens deportable do not render them inadmissible because of the "petty offense exception" in section 212(a)(2)(A)(ii)(II) of the Act.  *See Matter of Cortez*, 25 I&N Dec. 301 (BIA 2010).  Under a faithful reading of *Blake v. Carbone*, some lawful permanent residents who are deportable for such convictions would thus be ineligible for section 212(c) relief solely because their crimes are too minor to render a similarly situated alien inadmissible.

Likewise, lawful permanent residents who are deportable under section 237(a)(2)(C) of the Act on the basis of relatively minor convictions for firearms possession would be ineligible for a section 212(c) waiver under the Second Circuit's test because such crimes are not turpitudinous.  *See Matter of Granados*, 16 I&N Dec. 726 (BIA 1979) (holding that carrying a concealed firearm is not a crime involving moral turpitude), *aff'd*, 624 F.2d 191 (9th Cir. 1980).  But lawful permanent residents who actually use firearms to inflict or threaten harm to victims would be eligible for relief because the violent character of their crimes would serve to "elevate" them to the level of crimes involving moral turpitude.  *See Matter of Medina*, 15 I&N Dec. 611 (BIA 1976) (holding that assault with a deadly weapon is a crime involving moral turpitude), *aff'd*, 547 F.2d 1171 (7th Cir. 1977).

Moreover, some lawful permanent residents are deportable based on convictions for aggravated felony "theft offenses" that would not render similarly situated aliens inadmissible for crimes involving moral turpitude

because the convictions arose under statutes encompassing a temporary taking of property. *See Matter of V-Z-S-*, 22 I&N Dec. 1338, 1350 n.12 (BIA 2000) (noting that temporary takings qualify as "theft offenses" even though they have traditionally not been considered turpitudinous).

It would be incongruous to exclude a deportable lawful permanent resident from eligibility for relief on the ground that his crime is not serious or turpitudinous enough to render a similarly situated alien inadmissible. Indeed, an approach to section 212(c) eligibility that would exclude only the *least* culpable offenders from relief cannot be said to have a rational connection to the goals or purposes of the immigration system. *See Judulang v. Holder*, 132 S. Ct. at 485 ("[T]he BIA's approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system.").

### 2. *Abebe v. Mukasey* Approach

In its amicus brief, the Federation for American Immigration Reform ("FAIR") expresses the view that the Supreme Court's decision in *Judulang* militates in favor of a strict textual interpretation of section 212(c). FAIR thus supports a "clean slate" approach similar to that adopted by the Ninth Circuit in *Abebe v. Mukasey*, 554 F.3d 1203 (9th Cir. 2009) (en banc) (per curiam), which held that the Constitution does not require that section 212(c) relief be made available to any deportable lawful permanent residents. There are several insurmountable obstacles to our adoption of the *Abebe* approach.

First, as we noted in *Matter of Moreno-Escobosa*, 25 I&N Dec. 114 (BIA 2009), the Attorney General has promulgated a regulation that authorizes many deportable lawful permanent residents to seek section 212(c) waivers. 8 C.F.R. § 1212.3. That regulation has the force and effect of law as to this Board, so we are bound to effectuate it absent a contrary directive from a reviewing court or the Attorney General. *See Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989); *see also Pascua v. Holder*, 641 F.3d 316, 319 n.2 (9th Cir. 2011) (stating that *Abebe* did not undermine the validity of regulations extending section 212(c) relief to the deportation context).

FAIR maintains that *Judulang* has undermined the rationale of *Moreno-Escobosa* by casting doubt on the validity of 8 C.F.R. § 1212.3. We disagree. The Supreme Court's decision in *Judulang* affected 8 C.F.R. § 1212.3(f)(5), which contains the "statutory counterpart" requirement, but the regulation as a whole is presumed to be severable from that provision, because it remains "'fully operative' and workable administrative machinery" even if the statutory counterpart requirement (or an aspect of it) is deleted. *INS v. Chadha*, 462 U.S. 919, 934−35 (1983) (discussing the

severability of statutes).  Since 8 C.F.R. § 1212.3 has not been abrogated through the regulatory process or invalidated in its entirety by the Supreme Court or any circuit court of appeals, we must follow it to the extent we can.

Our reluctance to adopt the *Abebe* approach is "further influenced by the presumption that the Federal immigration laws are intended to have uniform nationwide application and to implement a unitary Federal policy." *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 508 (BIA 2008).  We would face an obstacle to adopting the *Abebe* approach as a nationwide administrative rule, even if the regulations permitted us to, because that approach may well conflict with the Second Circuit's constitutional rulings in *Blake v. Carbone* and *Francis v. INS*.  Because the Second Circuit has already held that denial of section 212(c) relief would pose serious constitutional problems for deportable lawful permanent residents whose offenses are encompassed by the grounds of inadmissibility, we arguably are not free to adopt FAIR's proposed interpretation in Second Circuit cases.  *Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575−78 (1988) (holding that the imperative of constitutional avoidance trumps traditional principles of administrative deference).

Finally, declaring virtually all deportable lawful permanent residents ineligible for section 212(c) relief would constitute an abrupt departure from more than 30 years of established practice and would prejudicially upset the reasonable expectations of a great many individuals.  *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947); *ARA Servs., Inc. v. NLRB*, 71 F.3d 129, 135−36 & n.3 (4th Cir. 1995); *Retail, Wholesale and Dep't Store Union, AFL-CIO v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972).

### 3. *Hernandez-Casillas* Approach

The American Immigration Lawyers Association ("AILA") urges us to adopt an approach similar to that we espoused in *Matter of Hernandez-Casillas*, 20 I&N Dec. 262 (BIA 1990; A.G. 1991).  In that 1990 case, we broadened the availability of section 212(c) relief by making it "applicable to all grounds of deportability with the exception of those comparable to the exclusion grounds expressly excluded by section 212(c) [such as those relating to terrorists, saboteurs, and war criminals], rather than limiting it, as now, to grounds of deportability having equivalent exclusion provisions."  *Id*. at 266.  That broader approach, we noted, was no less "logical" than limiting section 212(c) relief to aliens covered by grounds of deportability having "equivalent" exclusion provisions and had "the benefit of alleviating potential hardships to sometimes deserving aliens."  *Id*.  However, in 1991, the Attorney General overruled our decision in *Hernandez-Casillas* in favor of an approach to section 212(c)

eligibility that more closely resembled the "statutory counterpart" rule. *Id.* at 280−93.

### 4. The Approach We Now Adopt

After careful consideration of intervening developments, we conclude that an approach resembling the one we adopted in *Hernandez-Casillas* is the only option that allows us to fully implement the *Judulang* Court's mandate. Alone among the available alternatives, it places inadmissible and deportable lawful permanent residents on a truly level playing field while disregarding mechanical distinctions that arise from the statutory structure and that bear no relation either to deportable aliens' fitness to remain in this country or to the overall purposes of the immigration laws. Importantly, moreover, it provides applicants, attorneys, and adjudicators with a straightforward test of eligibility for relief that is far better adapted to the "streamlined" nature of removal proceedings than any of the plausible alternatives.

We recognize that this approach is in tension with the regulatory "statutory counterpart" requirement of 8 C.F.R. § 1212.3(f)(5), as well as with the Attorney General's understanding of that requirement, which is reflected in his own *Hernandez-Casillas* decision and the Supplementary Information accompanying the promulgation of the regulation. *See* 69 Fed. Reg. at 57,831−32. Regulations and precedents of the Attorney General are ordinarily binding upon us. *See, e.g.*, *Matter of E-L-H-*, 23 I&N Dec. 814 (BIA 2005); *Matter of Ponce De Leon*, 21 I&N Dec. 154, 158−59 (BIA 1996). But in this instance, those authorities embody an understanding of the law that has been superseded by the Supreme Court's intervening decision in *Judulang*.[12] We therefore conclude that we must reevaluate the proper approach to section 212(c) eligibility de novo in view of the criteria and instructions set forth by the Supreme Court. We are obligated to

---

[12] Citing the Attorney General's decision in *Hernandez-Casillas* as supporting authority, the Supplementary Information accompanying the section 212(c) regulations at 8 C.F.R. § 1212.3 endorsed as "correct" a commenter's view that "an alien charged and found deportable as an aggravated felon is not eligible for section 212(c) relief 'if there is no comparable ground of inadmissibility for the specific *category* of aggravated felony charged.'" 69 Fed. Reg. at 57,831 (Supplementary Information). As examples of categories that lacked the requisite "comparable ground," it identified "sexual abuse of a minor" and "crime of violence"—the aggravated felonies at issue in *Matter of Blake*, 23 I&N Dec. at 722, and *Matter of Brieva*, 23 I&N Dec. at 766. *Id.* Thus, the Supplementary Information characterizes the Attorney General's decision in *Hernandez-Casillas* as reflecting an understanding of the statutory counterpart rule that we are no longer able to apply because it is incompatible with *Judulang*.

implement the Supreme Court's mandate in lieu of any arguably conflicting authorities that would otherwise bind us.

In light of the foregoing, we now hold that otherwise qualified applicants may apply for section 212(c) relief in removal proceedings to waive *any* ground of deportability, *unless* the applicant is subject to the grounds of inadmissibility under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act. *See* 8 C.F.R. § 1212.3(f)(3).

## B. Retroactivity

Our adoption of the foregoing eligibility criteria should eliminate most arbitrary and capricious distinctions between lawful permanent residents, but it is not the end of the story because section 212(c) relief remains available in post-IIRIRA removal proceedings (or in pre-IIRIRA deportation proceedings in which AEDPA would otherwise preclude relief) *only* where the pertinent lawful permanent resident's subjection to the AEDPA and IIRIRA amendments would attach a "new disability, in respect to transactions or considerations already past." *INS v. St. Cyr*, 533 U.S. at 321 (citation omitted). The following discussion establishes uniform standards for identifying those lawful permanent residents.

### 1. Plea Versus Trial

The alien in *St. Cyr* entered a pre-AEDPA *guilty plea* to an offense that rendered him deportable (but eligible for a section 212(c) waiver) at the time of conviction. Thus it is settled that AEDPA's restriction of section 212(c) relief and IIRIRA's subsequent repeal of that section cannot be applied to individuals in that specific posture, most of whom would have had good reason to rely on the availability of a section 212(c) waiver when deciding whether a plea was in their best interest. Consensus becomes more elusive, however, as the reliance-based interests of individual applicants become less obvious.

By its literal terms, the *St. Cyr* Court's holding applied only to "aliens . . . whose convictions were obtained through *plea agreements* and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their *plea* under the law then in effect." *INS v. St. Cyr*, 533 U.S. at 326 (emphasis added). Noting that "[p]lea agreements involve a *quid pro quo* between a criminal defendant and the government," the *St. Cyr* Court determined that "preserving the possibility of [section 212(c)] relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *Id*. at 321, 323.

The *St. Cyr* Court's focus on the contractual nature of plea agreements has led some reviewing courts to conclude that the AEDPA and IIRIRA amendments have no impermissible retroactive effect on individuals who were convicted of deportable offenses after trial, on the theory that such individuals cannot demonstrate detrimental reliance on the potential availability of section 212(c) relief. *See, e.g.*, *Kellermann v. Holder*, 592 F.3d 700, 705−07 (6th Cir. 2010); *Ferguson v. U.S. Att'y Gen.*, 563 F.3d 1254, 1271 (11th Cir. 2009). Initially, the Attorney General promulgated a set of 2004 regulatory amendments to 8 C.F.R. § 1212.3 that implemented *St. Cyr* by categorically declaring section 212(c) relief unavailable under that regulatory provision to any individual convicted after trial.[13] *See* 69 Fed. Reg. at 57,828, 57,835 (codified at 8 C.F.R. § 1212.3(h)). Subsequently, a series of decisions by various courts further developed this issue.

The Second Circuit, which initially declared section 212(c) relief unavailable to lawful permanent residents with trial-based convictions, subsequently refined its jurisprudence by holding that the retroactivity of the AEDPA and IIRIRA amendments must be assessed case by case where the applicant was convicted after a trial, with the burden being on the applicant to demonstrate that he actually relied on the availability of section 212(c) relief when deciding to go to trial. *See Walcott v. Chertoff*, 517 F.3d 149, 154−55 (2d Cir. 2008).

The Third, Eighth, and Tenth Circuits have taken a different approach, concluding that the AEDPA and IIRIRA amendments were impermissibly retroactive vis-à-vis aliens who went to trial before April 24, 1996, *without regard* to subjective reliance. *See Lovan v. Holder*, 574 F.3d 990, 993−94 (8th Cir. 2009); *Hem v. Maurer*, 458 F.3d 1185, 1199−1200 (10th Cir. 2006); *Ponnapula v. Ashcroft*, 373 F.3d 480, 494−96 (3d Cir. 2004). Indeed, the Third Circuit has concluded that the main focus of the retroactivity analysis is not reliance at all but simply whether a statute attaches new legal consequences to past events. The court viewed potential reliance as only one element to consider in ascertaining whether a "new disability" exists. *See Atkinson v. Att'y Gen. of U.S.*, 479 F.3d 222, 227−29 (3d Cir. 2007); *see also Olatunji v. Ashcroft*, 387 F.3d 383, 388−95 (4th Cir. 2004) (holding, outside the section 212(c) context, that the presumption against statutory retroactivity applies without regard to objective or subjective reliance, and stating that while the presumption against retroactivity serves reliance interests, it does not make reliance a

---

[13] The respondent was convicted by means of a plea agreement. We nevertheless address the impact of *St. Cyr* upon individuals convicted after trial in order to provide a uniform nationwide rule.

requirement). Accordingly, in *Atkinson* the Third Circuit held that the repeal of section 212(c) was impermissibly retroactive as applied to a lawful permanent resident convicted after a pre-AEDPA trial, even though he had never been offered a plea agreement. *Atkinson v. Att'y Gen. of U.S.*, 479 F.3d at 230−31.

The Supreme Court has not directly reviewed any of the circuit courts' decisions addressing the retroactivity of the AEDPA and IIRIRA amendments as applied to lawful permanent residents convicted after trial. However, the Court has issued *Vartelas*, in which it cited *Olatunji* and *Ponnapula* with approval and unequivocally stated that "the presumption against retroactive application of statutes does not require a showing of detrimental reliance." *Vartelas v. Holder*, 132 S. Ct. at 1491. The *Vartelas* Court acknowledged that an objective "likelihood of reliance on prior law strengthens the case for reading a newly enacted law prospectively" but stated that such a likelihood is "not a necessary predicate for invoking the antiretroactivity principle." *Id.* (citing *Olatunji v. Ashcroft*, 387 F.3d at 393).

In the wake of *Vartelas*, the Fifth and Ninth Circuits have joined the Third, Eighth, and Tenth in holding that lawful permanent residents who sustained trial-based, pre-AEDPA convictions are now eligible to apply for section 212(c) relief whether or not they can show actual subjective reliance on prior law. *See Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1117−21 (9th Cir. 2013); *Carranza-De Salinas v. Holder*, 700 F.3d 768, 773−75 (5th Cir. 2012). The Ninth Circuit has stated that after *Vartelas* it is not necessary to prove *any* type of reliance in order to demonstrate that a civil statute's application is impermissibly retroactive. *Cardenas-Delgado v. Holder*, 720 F.3d at 1119.

Under the circumstances, we are convinced that Supreme Court and emerging circuit court precedent has superseded the regulatory prohibition against granting section 212(c) relief under *St. Cyr* to aliens convicted after trial. Therefore, Immigration Judges nationwide should now treat deportable lawful permanent residents convicted after trial no differently for purposes of section 212(c) eligibility than deportable lawful permanent residents convicted by means of plea agreements.[14] In view of the *Vartelas*

---

[14] We recognize that several of the Federal courts of appeals that initially declared section 212(c) relief unavailable to aliens convicted after trial have not yet had occasion to revisit the issue in light of *Vartelas*. However, all but one of those courts' decisions were premised on the assumption that the application of a new statute is impermissibly retroactive only where the party invoking the antiretroactivity principle has a reliance-based interest in the application of prior law. *See, e.g., Kellermann v. Holder*, 592 F.3d at 707; *Ferguson v. U.S. Att'y Gen.*, 563 F.3d at 1271;

(continued . . .)

Court's determination that the presumption against retroactive application of statutes does not require a showing of detrimental reliance, moreover, we conclude that a lawful permanent resident convicted after trial need not demonstrate that he acted or could have acted (or refrained or could have refrained from acting) in reliance on the availability of section 212(c) relief when structuring his conduct. All that is required under *St. Cyr* and *Vartelas* is a showing that the AEDPA or IIRIRA amendments attached a "new disability" to pleas or convictions occurring before their effective dates.[15]

_____

*Montenegro v. Ashcroft*, 355 F.3d 1035, 1037 (7th Cir. 2004); *Rankine v. Reno*, 319 F.3d 93, 100 (2d Cir. 2003); *Dias v. INS*, 311 F.3d 456, 458 (1st Cir. 2002). Because *Vartelas* has since clarified that no such reliance requirement exists, we consider those decisions superseded by the Supreme Court's most recent pronouncement.

In *Chambers v. Reno*, 307 F.3d 284, 292 (4th Cir. 2002), a three-judge panel of the Fourth Circuit left open the possibility that a statute may have an impermissible retroactive effect, even as to those who did not detrimentally rely on prior law. But two judges nonetheless held (over a dissent) that Chambers could not invoke the antiretroactivity presumption because the repeal of section 212(c) did not attach a new legal consequence to his *decision to go to trial*. *Id.* at 293. We conclude that the court's emphasis on Chambers' strategic decision to go to trial has also been superseded by *Vartelas*, which made clear that the "essential inquiry" for antiretroactivity purposes is not whether a new law attaches unanticipated consequences to preenactment *decisions*, but simply "whether the new provision attaches new legal consequences to *events completed* before its enactment." *Vartelas v. Holder*, 132 S. Ct. at 1491 (emphasis added) (quoting *Landgraf v. USI Film Products*, 511 U.S. at 270) (internal quotation marks omitted). Whether it resulted from a plea or a trial, a conviction entered before April 1, 1997, is an "event completed" before IIRIRA's effective date.

[15] Although a conviction by plea is not required, in cases where an applicant for section 212(c) relief *was* convicted by plea, as here, the version of the statute that applies to the applicant is determined by reference to the date when the plea agreement was made. *INS v. St. Cyr*, 533 U.S. at 326 (holding "that § 212(c) relief remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect"); *see also* 8 C.F.R. § 1212.3(h)(1)−(2). Thus, an applicant who was convicted of a removable offense on May 1, 1996, based on a guilty plea entered on April 20, 1996, would not be subject to the bar imposed by section 440(d) of the AEDPA, because the plea preceded AEDPA's effective date. Likewise, a person convicted of a removable offense on April 10, 1997, based on a guilty plea entered on March 27, 1997, may remain eligible for section 212(c) relief—despite the fact that the conviction was entered after that section's repeal—because the underlying plea agreement was made while section 212(c) remained in effect (as amended by section 440(d) of the AEDPA). In such cases, the applicant will have the burden of proving the date when the plea agreement was made.

## 2.  Deportable "at the Time of Conviction"?

In its supplemental brief, the DHS argues that the AEDPA and IIRIRA amendments are impermissibly retroactive only with respect to lawful permanent residents whose pre-AEDPA or pre-IIRIRA convictions rendered them both deportable and excludable under the law in effect at the time of conviction.  In the DHS's view, those individuals are the only ones who were entitled to rely on the potential availability of section 212(c) relief in a manner that would give rise to retroactivity concerns.  However, we decline to require a showing of deportability at the time of conviction, for three main reasons.

First, such a requirement would necessarily be founded on the premise that a new statute has an impermissible retroactive effect only upon those individuals who relied on prior law.  As we just explained, however, the Supreme Court has now determined that a "likelihood of reliance on prior law" is "not a necessary predicate for invoking the antiretroactivity principle."  *Vartelas v. Holder*, 132 S. Ct. at 1491.  Instead, the pertinent question for retroactivity purposes is simply whether the AEDPA and IIRIRA amendments created a new legal disability in respect to preenactment events.  For lawful permanent residents who are deportable on the basis of pre-AEDPA convictions, AEDPA and IIRIRA plainly created a new disability, regardless of *when* the convictions rendered them deportable, by eliminating the prospect of section 212(c) relief.  While the prospect of such relief was undoubtedly more contingent for some individuals with pre-AEDPA convictions than for others, this fact is not determinative of the retroactivity question.  *See An Na Peng v. Holder*, 673 F.3d 1248, 1257 (9th Cir. 2012); *Ponnapula v. Ashcroft*, 373 F.3d at 495−96.

Second, such a requirement cannot be squared with *United States v. Leon-Paz*, 340 F.3d 1003, 1006−07 (9th Cir. 2003), in which the Ninth Circuit held that the repeal of section 212(c) was impermissibly retroactive vis-à-vis a lawful permanent resident who was convicted in 1995 of an offense that did not render him deportable until 1996, when it was classified an aggravated felony.  As the court explained, Leon-Paz "had two bulwarks to protect himself against attacks on his residence in this country" at the time of his conviction: "The first was the fact that he had pled to a crime that was below the aggravated felony threshold, and the second was § 212(c) itself in case the definition of aggravated felony changed as it often had and has."  *Id*. at 1006.  Although the first bulwark was admittedly torn down by IIRIRA's amendment to the aggravated felony definition (which Congress made explicitly retroactive), the second bulwark remained intact because, as the Supreme Court determined in *St. Cyr*, Congress had

not expressed a clear intention that the repeal of section 212(c) would have retroactive effect.

Third, and finally, requiring an exclusive focus on the law in effect at the time of conviction would be unmanageable in practice. It would require Immigration Judges to engage in an extraordinarily burdensome and imprecise historical inquiry involving the reconstruction of complex legal regimes that have not existed for decades. An example illustrates the problem.

Today, aliens are commonly placed in removal proceedings on the basis of rehabilitative dispositions that do not qualify as "convictions" under State law. *See, e.g.*, *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999); *Matter of Punu*, 22 I&N Dec. 224 (BIA 1998). Before 1997, however, such dispositions did not uniformly qualify as "convictions" for immigration law purposes. *See, e.g.*, *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995); *Matter of Ozkok*, 19 I&N Dec. 546 (BIA 1988). Under the DHS's proposed interpretation, lawful permanent residents who received certain pre-IIRIRA diversionary dispositions apparently would be ineligible for section 212(c) relief because they would not have been deportable at the time of their convictions. Further, when such lawful permanent residents are placed in removal proceedings on the basis of their pre-IIRIRA convictions, Immigration Judges seeking to evaluate their eligibility for section 212(c) relief would presumably need to determine not only when the relevant judgment was entered but also whether the judgment had rehabilitative features that might have excluded it from treatment as a "conviction" under the understanding of *Ozkok* then prevailing in the relevant jurisdiction.[16] Even if we assume that sufficiently detailed records of such long-past judgments would be available, it is evident that determinations of this kind could rarely be made without protracted litigation.

The foregoing considerations lead us to conclude that the AEDPA and IIRIRA amendments to section 212(c) of the Act do not apply to an otherwise eligible lawful permanent resident who is presently deportable or removable by virtue of a plea or conviction that occurred before April 24, 1996. An otherwise eligible lawful permanent resident who is presently deportable or removable by virtue of a plea or conviction entered between

---

[16] An additional layer of complexity would potentially be introduced if the offense of conviction is "divisible" with respect to the current or former grounds of removal. In such cases, the Immigration Judge would arguably be required to determine *not* whether the alien is removable under the *current* understanding of the "modified categorical approach," *see Descamps v. United States*, 133 S. Ct. 2276 (2013), but rather whether he would have been deportable and excludable pursuant to the then-current understanding of that approach.

April 24, 1996, and April 1, 1997, is subject to the version of section 212(c) that resulted from section 440(d) of the AEDPA (unless his proceedings commenced before AEDPA's enactment, *see supra* note 11) but is not subject to the repeal of section 212(c), which became effective on April 1, 1997. The DHS's narrower proposed rule would run too high a risk of excluding qualified applicants and would consume administrative resources that would be better spent simply adjudicating the substantive merits of the waiver application. Section 212(c) relief remains discretionary, and the Immigration Judge may still deny such relief if the applicant's equities are found to be outweighed by negative factors. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1692 (2013).

## C. Result

Having thoroughly considered the arguments of the parties and the Supreme Court's decisions in *St. Cyr*, *Judulang*, and *Vartelas*, as well as the numerous decisions of the courts of appeals, it is our judgment that a lawful permanent resident who has accrued 7 consecutive years of lawful unrelinquished domicile in the United States and who is removable or deportable by virtue of a plea or conviction entered before April 24, 1996, is eligible to apply for section 212(c) relief in removal or deportation proceedings *unless*:

> (1) The applicant is subject to the grounds of inadmissibility under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act; or
>
> (2) The applicant has served an aggregate term of imprisonment of at least 5 years as a result of one or more aggravated felony convictions entered between November 29, 1990, and April 24, 1996.

If an otherwise qualifying lawful permanent resident is removable or deportable by virtue of a plea or conviction entered between April 24, 1996, and April 1, 1997, he or she is eligible to apply for section 212(c) relief in removal or deportation proceedings *unless*:

> (1) The applicant's proceedings commenced on or after April 24, 1996, and the conviction renders the applicant deportable under one or more of the deportability grounds enumerated in section 440(d) of the AEDPA; or
>
> (2) The applicant is subject to the grounds of inadmissibility under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act; or
>
> (3) The applicant has served an aggregate term of imprisonment of at least 5 years as a result of one or more aggravated felony convictions entered between November 29, 1990, and April 24, 1996.

The respondent is a lawful permanent resident with more than 7 years of lawful unrelinquished domicile in the United States. Further, he is removable on the basis of an aggravated felony conviction that was entered before April 24, 1996. That conviction neither renders him inadmissible under sections 212(a)(3)(A), (B), (C), or (E), or (10)(C) of the Act nor resulted in the imposition of a 5-year term of imprisonment. Accordingly, the respondent is eligible to apply for section 212(c) relief.

## IV. CONCLUSION

In conclusion, Immigration Judges should now adjudicate the merits of any application for section 212(c) relief filed by a lawful permanent resident who satisfies the foregoing eligibility criteria. The respondent qualifies for section 212(c) relief under those criteria. His appeal will therefore be sustained, and the record will be remanded for further proceedings to address whether he merits such relief in the exercise of discretion. *See, e.g.*, *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978).

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.